[No. 73747-9.   En Banc.]
Argued January 13, 2004.      Decided July 7, 2005.

JAMES T. JAMES ET AL., *Respondents*, v. KITSAP COUNTY ET AL., *Appellants*.

576

*Peter L. Buck* and *Jeffrey S. Weber* (of *Buck & Gordon, L.L.P.*), for appellants.

*Charles K. Wiggins* and *Kenneth W. Masters* (of *Wiggins & Masters, P.L.L.C.*); *William H. Broughton*; and *Martin E. McQuaid*, for respondents.

*Paul H. Reilly, Deputy Prosecuting Attorney*, on behalf of Skagit County, amicus curiae.

*Brent D. Lloyd* on behalf of Washington Association of Prosecuting Attorneys, amicus curiae.

*David J. Lenci, Grace T. Yuan*, and *Julie A. Halter* on behalf of Washington Schools Risk Management Pool, amicus curiae.

¶1 C. JOHNSON, J. — In this case, we are asked to determine whether the imposition of impact fees as a condition on the issuance of a building permit is a "land use decision" subject to procedural requirements of the Land Use Petition Act (LUPA), chapter 36.70C RCW. Here, individuals and developers (Developers) seek a refund of impact fees paid to Kitsap County (County), claiming these fees were improperly imposed during a period the County's comprehensive plan was noncompliant with the Growth Management Act (GMA), chapter 36.70A RCW. The trial court found that the Developers' claims were not subject to the procedural requirements of LUPA and granted a summary judgment motion in favor of the Developers. We reverse and remand this case back to the trial court.

## FACTS AND PROCEDURAL HISTORY

¶2 In 1977, prior to the enactment of the GMA, the County adopted a comprehensive plan under the Planning Enabling Act, chapter 36.70 RCW, which contained a capital facilities plan element providing the capital facility improvements necessary to serve new development in Kitsap County. In 1994, the County began drafting a new comprehensive plan in order to comply with the requirements of the newly enacted GMA. The County was required to adopt GMA-compliant regulations by December 1994. The County first attempted to comply with the GMA in a comprehensive plan adopted by Kitsap County Ordinance 169-1994 in December 1994 and, like the 1977 plan, it contained a capital facilities plan element. Clerk's Papers (CP) at 404.

¶3 In October 1995, the Central Puget Sound Growth Management Hearings Board (GMHB) invalidated the County's 1994 Comprehensive Plan. CP at 57-153. Among other things, the GMHB found the County's plan incom-

plete under RCW 36.70A.070(3),[1] the capital facilities plan element requirements of the GMA. CP at 134-35. Attempting to reach compliance with the GMA, the County adopted a second comprehensive plan in 1996 by Kitsap County Ordinance 203-1996. CP at 404. This plan, however, was also invalidated by the GMHB, which again found the County's capital facility plan element noncompliant. CP at 196. In 1998, the County adopted a third comprehensive plan by Kitsap County Ordinance 215-1998, which was found fully compliant with the requirements of the GMA in 2000. CP at 405.

¶4 In 1991, the County adopted an impact fee ordinance to aid in funding the capital facility improvements identified in the County's 1977 Comprehensive Plan pursuant to RCW 82.02.060. From 1992 to October 1995, impact fees were collected by the County for parks and roads from any applicant for a residential, commercial, or mobile home building permit based on the 1977 pre-GMA Comprehensive Plan and then the 1994 Comprehensive Plan. Prior to the GMHB's decision in October 1995 invalidating the County's 1994 Comprehensive Plan, the County collected and spent the impact fees on developing parks and roads to support the new development. CP at 405-06.

¶5 After the GMHB ruling in October 1995, the County no longer required applicants seeking building permits to pay impacts fees; and, rather than imposing a moratorium on development, it required applicants to sign an agreement whereby the applicant promised to pay impact fees in the future when the County had a comprehensive plan fully compliant with the GMA. These agreements were converted by the County into liens on the applicants' property. The County also allowed applicants to pay the impact fees if the applicants requested to do so. However, the County did not spend any of these impact fees and held the funds in

---

[1] The GMHB specifically concluded that "the Plan's capital facilities element does not comply with the [GMA], nor can the Plan's land use element since the two elements are inextricably linked." CP at 135.

separate accounts for the parks department and the public works department. CP at 406-07.

¶6 In March 2000, the GMHB found the 1998 Comprehensive Plan to be fully compliant with the GMA, and the County again began requiring applicants seeking building permits to pay impact fees at the time it issued building permits. The County also began enforcing the impact fee agreements made between it and applicants during the time of the County's noncompliance. CP at 407.

¶7 In September 1999, the Developers filed a claim with the County, and, in November 1999, the Developers filed a class action lawsuit against the County in Kitsap County Superior Court. CP at 3-15. The Developers sought a judgment against the County for the amount of the impact fees incurred as an obligation to pay park and road impact fees and for impact fees paid to the County by Developers. In August 2002, the County and the Developers filed cross motions for summary judgment.[2] The Developers sought to have the court order a refund of their moneys for the road and park portion of the impact fees paid to the County, including interest, an award of attorney fees, and an injunction requiring the County to remove liens from those properties with outstanding, unpaid lien agreements or liens on Developers' real property. CP at 653. The County moved to have the Developers' claims dismissed because they were time-barred under LUPA. In the alternative, the County sought summary judgment against those plaintiffs who did not pay under protest.

¶8 The trial court granted the Developers' motion for summary judgment, ordering the County to pay the Developers who had paid the impact fees at the time of application and the Developers who had paid the County subsequent to a lien agreement. The trial court also enjoined the County from continuing to maintain recorded, unpaid lien agreements on property owned or formerly owned by the

---

[2] In January 2001, the County moved for summary judgment, claiming that it complied with RCW 82.02.050 and that the Developers failed to exhaust their administrative remedies. CP at 16-34. This motion was denied by the trial court.

Developers. CP at 1488-89. The Developers were awarded a total judgment of $3,346,506, including prejudgment interest. CP at 1592.

¶9 The County filed an appeal of the judgment directly with this court.[3]

## ANALYSIS

¶10 Summary judgment is rendered where there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. CR 56(c). When reviewing an order for summary judgment, an appellate court engages in the same inquiry as the trial court. *Denaxas v. Sandstone Court of Bellevue, L.L.C.*, 148 Wn.2d 654, 662, 63 P.3d 125 (2003). Questions of law are reviewed de novo.

¶11 The central issue in this case is whether the imposition of impact fees as a condition on the issuance of a building permit is a "land use decision" subject to the procedural requirements of LUPA. The County argues that the trial court erred in granting the Developers' motion for summary judgment because the Developers failed to exhaust their administrative remedies and because they are time-barred under LUPA. Additionally, the County claims that the Developers are independently barred from receiving a refund of their impact fees because they failed to pay under protest. In the alternative, the County argues the doctrine of equitable estoppel bars the Developers' claims. The Developers contend that their request for a refund of their impact fees is subject to a three-year statute of limitations because the imposition of impact fees are revenue decisions, not land use decisions.

¶12 In 1990 and 1991, the legislature enacted the GMA, which provided that counties containing either a high population or a high population growth, meeting specific

---

[3] Developers initially cross-appealed the trial court's denial of the Developers' request for attorney fees, but the Developers have since abandoned that appeal. *See* Br. of Resp't's at 49.

criteria, were required to conform with its provisions. RCW 36.70A.040. The legislature provided the elements necessary for counties' comprehensive plans to comply with the GMA in RCW 36.70A.070, which includes a capital facilities plan element. RCW 36.70A.070(3).

¶13 One of the principal goals of the GMA is to "[e]nsure that those public facilities and services necessary to support development shall be adequate to serve the development at the time the development is available for occupancy and use without decreasing current service levels below locally established minimum standards." RCW 36.70A.020(12). To effectuate this goal, "[c]ounties, cities, and towns that are required or choose to plan under RCW 36.70A.040 are authorized to impose impact fees on development activity as part of the financing for public facilities . . . ."[4] RCW 82.02.050(2). An "impact fee," for the purposes of chapter 82.02 RCW, is defined as "a payment of money imposed upon development as a condition of development approval to pay for public facilities needed to serve new growth and development . . . ." RCW 82.02.090(3).

¶14 In chapter 82.02 RCW, the legislature places several limitations on the calculation and imposition of impact fees, *see* RCW 82.02.050-.070, and it explicitly provides:

> Impact fees may be collected and spent only for the public facilities defined in RCW 82.02.090[5] which are addressed by a capital facilities plan element of a comprehensive land use plan

---

[4] In chapter 82.02 RCW, the legislative explicitly stated:

(1) It is the intent of the legislature:

   (a) To ensure that adequate facilities are available to serve new growth and development;

   (b) To promote orderly growth and development by establishing standards by which counties, cities, and towns may require, by ordinance, that new growth and development pay a proportionate share of the cost of new facilities needed to serve new growth and development; and

   (c) To ensure that impact fees are imposed through established procedures and criteria so that specific developments do not pay arbitrary fees or duplicative fees for the same impact.

RCW 82.02.050(1)(a)-(c).

[5] RCW 82.02.090(7) provides: " 'Public facilities' means the following capital facilities owned or operated by government entities: (a) Public streets and roads;

adopted pursuant to the provisions of RCW 36.70A.070 or the provisions for comprehensive plan adoption contained in chapter 36.70, 35.63, or 35A.63 RCW. After the date a county, city, or town is required to adopt its development regulations under chapter 36.70A RCW, continued authorization to collect and expend impact fees shall be contingent on the county, city, or town adopting or revising a comprehensive plan [element] . . . .

RCW 82.02.050(4). Additionally, impact fees collected for system improvements are authorized by statute to be expended only in conformance with the capital facilities element of the comprehensive plan, and impact fees must be expended or encumbered within six years of receipt. RCW 82.02.070(2), (3).

¶15 Chapter 82.02 RCW also provides mechanisms by which permit applicants may challenge the impact fees imposed or receive a refund of impact fees paid. First, RCW 82.02.070(5) requires that "[e]ach county, city, or town that imposes impact fees shall provide for an administrative appeals process for the appeal of an impact fee" and provides that "[t]he impact fee may be modified upon a determination that it is proper to do so based on principles of fairness." Second, if a permit applicant wants an immediate issuance of a permit or approval for other building activity but objects to the impact fee imposed, the applicant can pay the fee under protest under RCW 82.02.070(4),[6] effectively preserving the right to challenge the legality of the impact fee imposed. Third, RCW 82.02.080(1) allows for property owners to request a refund of impact fees paid if a "county, city, or town fails to expend or encumber the impact fees within six years of when the fees were paid or other such period of time established pursuant to RCW 82.02.070(3) . . . ."

¶16 In 1995, the legislature enacted LUPA, with the purpose "to reform the process for judicial review of land

(b) publicly owned parks, open space, and recreation facilities; (c) school facilities; and (d) fire protection facilities in jurisdictions that are not part of a fire district."

[6] RCW 82.02.070(4) provides: "Impact fees may be paid under protest in order to obtain a permit or other approval of development activity."

use decisions made by local jurisdictions, by establishing uniform, expedited appeal procedures and uniform criteria for reviewing such decisions, in order to provide consistent, predictable, and timely judicial review." RCW 36.70C.010. LUPA explicitly replaced the writ of certiorari for appealing land use decisions, becoming the *"exclusive* means of judicial review of land use decisions" with certain enumerated exceptions.[7] RCW 36.70C.030(1) (emphasis added). A "land use decision" is defined as "a final determination by a local jurisdiction's body or officer with the highest level of authority to make the determination, including those with authority to hear appeals." RCW 36.70C.020(1). In order to have standing to bring a land use petition under LUPA, the petitioner must have exhausted his or her administrative remedies to the extent required by law. RCW 36.70C.060(2)(d). Judicial review under LUPA is commenced by filing a land use petition in superior court within 21 days of the issuance of the land use decision. RCW 36.70C.040(3). A land use petition is barred unless it is timely filed and served. RCW 36.70C.040(2).

¶17 We first address whether the imposition of an impact fee as a condition on the issuance of a building permit is a "land use decision" under LUPA. The County argues the Developers' action for a refund is time barred under LUPA because the Developers failed to challenge the impact fees imposed within 21 days of the issuance of the building permit. The Developers claim the imposition of

---

[7] RCW 36.70C.030(1) enumerates the following exceptions:

"(a) Judicial review of:

"(i) Land use decisions made by bodies that are not part of a local jurisdiction;

"(ii) Land use decisions of a local jurisdiction that are subject to review by a quasi-judicial body created by state law, such as the shorelines hearings board, the environmental and land use hearings board, or the growth management hearings board;

"(b) Judicial review of applications for a writ of mandamus or prohibition; or

"(c) Claims provided by any law for monetary damages or compensation. If one or more claims for damages or compensation are set forth in the same complaint with a land use petition brought under this chapter, the claims are not subject to the procedures and standards, including deadlines, provided in this chapter for review of the petition. The judge who hears the land use petition may, if appropriate, preside at a trial for damages or compensation."

impact fees is a revenue decision, not a land use decision, subject to a three-year statute of limitations. We find that the imposition of impact fees as a condition on the issuance of a building permit is a "land use decision" subject to the time requirements of RCW 36.70C.040.

¶18 We have previously held that building permits are "land use decisions" subject to the procedural requirements of LUPA. In *Chelan County v. Nykreim*, we examined whether approval of a boundary line adjustment (BLA) application issued by a county officer was a "land use decision" under LUPA. 146 Wn.2d 904, 52 P.3d 1 (2002). In that case, Nykreim filed an application for a BLA with the Chelan County Planning Department, which was approved by the administrator of that department. More than a year after Nykreim's application was approved, Chelan County filed a complaint in superior court for declaratory judgment challenging the Chelan County provision on which Nykreim's BLA was approved.

¶19 We found Chelan County's action time barred and held that LUPA applies to both ministerial and quasi-judicial land use decisions. At the time the application was approved by the administrator of the Chelan County Planning Department, no clearly defined procedures existed for consideration and review of BLA decisions. Additionally, the administrator who granted Nykreim's BLA application was the Chelan County officer with the highest authority to make the final determination on the application. In concluding that ministerial determinations, like the officer's approval of Nykreim's BLA, are "land use decisions," we specifically noted that building permits are ministerial decisions which are subject to judicial review under LUPA, relying on *Wenatchee Sportsmen Ass'n v. Chelan County*, 141 Wn.2d 169, 4 P.3d 123 (2000). Chelan County did not challenge Nykreim's BLA within 21 days and was barred from bringing an action under LUPA.

¶20 In *Wenatchee Sportsmen*, we determined whether "a party's failure to timely appeal a county's approval of a site-specific rezone bar[s] it from challenging the validity of

the rezone in a later [action]." 141 Wn.2d at 175. In 1996, Chelan County rezoned property contrary to its interim urban growth area regulation (IUGA), allowing residential subdivisions outside designated urban growth areas. Although Chelan County's rezone was in violation of the GMA, it was not challenged until the Wenatchee Sportsmen Association filed a LUPA petition challenging the approval of a 1998 plat application, arguing that residential development outside of the IUGA violated the GMA.

¶21 We determined that Wenatchee Sportsmen Association's challenge to the legality of Chelan County's rezone was barred under LUPA because the decision was not challenged within 21 days. We found that "[b]ecause RCW 36.70C.040(2) prevents a court from reviewing a petition that is untimely, approval of the rezone became valid once the opportunity to challenge it passed" and that "[i]f there is no challenge to the decision, the decision is valid, the statutory bar against untimely petitions must be given effect, and the issue of whether the [rezone] is compatible with the IUGA is no longer reviewable." *Wenatchee Sportsmen Ass'n*, 141 Wn.2d at 181-82.

¶22 Furthermore, after the enactment of LUPA, we have not reviewed the validity of conditions imposed on the issuance of a permit separate from the review provided in chapter 36.70C RCW. For instance, in *Isla Verde International Holdings, Inc. v. City of Camas*, 146 Wn.2d 740, 49 P.3d 867 (2002), we reviewed an action brought by a developer under LUPA, challenging a permit condition as invalid because it was a tax, fee, or charge prohibited by RCW 82.02.020. Although *Isla Verde* did not involve impact fees, but a permit condition requiring a 30 percent open space set aside, we concluded this condition was a "tax, fee, or charge" under RCW 82.02.020 and was invalid because it did not fall within an exception to that provision. We specifically stated that "[r]eview is under the LUPA, chapter 36.70C RCW," and found the condition invalid. *Isla Verde*, 146 Wn.2d at 751, 770-71.

¶23 Consistent with our holdings in *Isla Verde, Nykreim,* and *Wenatchee Sportsmen,* we find that the imposition of impact fees as a condition on the issuance of a building permit is a land use decision and is not reviewable unless a party timely challenges that decision within 21 days of its issuance. As stated in *Isla Verde,* development conditions "must be tied to a specific, identified impact of a development on a community," 146 Wn.2d at 761, whether the condition is an open space set aside or an impact fee. Additionally, RCW 82.02.050(2) authorizes counties to impose impact fees as a condition on development to aid in financing new public facilities, and the GMA requires that public facilities necessary to serve new development be available at the time the development is ready for occupancy and use. *See* RCW 36.70A.020(12). Thus, identification of the specific impact of a development on a community, assessment of the public facilities necessary to serve that development, and determination of the amount of impact fees needed to aid in financing construction of the facilities at the time a county issues a building permit inextricably links the impact fees imposed to the issuance of the building permit. Under *Nykreim,* building permits are ministerial decisions subject to judicial review under LUPA, and we find that the imposition of impact fees as a condition on the issuance of a building permit is as well.

¶24 The Developers' complaint indicates they are challenging the legality of the County's action of imposing impact fees in the period of time that the County's comprehensive plan was noncompliant with the GMA. However, as decided in *Wenatchee Sportsmen,* the County's imposition of impact fees as a condition on issuance of building permits became valid once the opportunity passed to challenge those decisions. LUPA bars review of a land use decision if a challenge to that decision is not brought within 21 days of its issuance. The issue of whether the County improperly imposed impact fees as a condition on the issuance of building permits is no longer reviewable.

¶25 At no time have the Developers argued they are not subject to the procedural requirements of LUPA because

their claims fall within one of the exceptions enumerated in RCW 36.70C.030(1). Rather, the Developers argue they are not subject to the 21-day time limitation of LUPA because the superior court has original jurisdiction here under article IV, section 6 of the Washington State Constitution. The Developers further claim that because the superior court has original jurisdiction, their challenges to the County's imposition of impact fees as a condition on issuance of their building permits are subject to a three-year statute of limitations under *Henderson Homes, Inc. v. City of Bothell*, 124 Wn.2d 240, 877 P.2d 176 (1994). We disagree.

¶26 Article IV, section 6 of the Washington State Constitution provides that the "superior court shall have original jurisdiction in all cases at law which involve the title or possession of real property, or the legality of any tax, impost, assessment, toll, or municipal fine." In *Henderson Homes*, we held that a three-year statute of limitations applies to actions to recover invalid taxes under RCW 4.16.080(3) and "[t]he same principle applies to fees or charges, direct or indirect, on the subdivision of land when they do not comply with RCW 82.02.020." 124 Wn.2d at 248. We applied the three-year statute of limitations under RCW 4.16.080(3) prior to LUPA when no uniform procedure was in place to challenge the legality of impact fees. This conclusion is no longer viable in the wake of LUPA, which establishes uniform procedures and by its own terms is the "*exclusive* means of judicial review of land use decisions . . . ." RCW 36.70C.030(1) (emphasis added). Since we find that the County's imposition of impact fees as a condition on the issuance of a building permit is a land use decision, it necessarily follows that the procedures established by LUPA to challenge that decision dictate.

¶27 Applying the procedural requirements of LUPA to challenges to the legality of impact fees imposed does not divest the power of the superior court to exercise

its original jurisdiction under article IV, section 6.[8] It is axiomatic that a judicial power vested in courts by the constitution may not be abrogated by statute. *Blanchard v. Golden Age Brewing Co.*, 188 Wash. 396, 415, 63 P.2d 397 (1936). However, the Developers ignore the well established rule that where statutes prescribe procedures for the resolution of a particular type of dispute, state courts have required substantial compliance or satisfaction of the spirit of the procedural requirements before they will exercise jurisdiction over the matter. *Fisher Bros. Corp. v. Des Moines Sewer Dist.*, 97 Wn.2d 227, 230, 643 P.2d 436 (1982); *Banner Realty, Inc. v. Dep't of Revenue*, 48 Wn. App. 274, 738 P.2d 279 (1987) (holding that a superior court could not exercise its original jurisdiction under article IV, section 6 over a challenge to a tax decision where the party failed to strictly or substantially comply with statutory procedural requirements); *accord Torrance v. King County*, 136 Wn.2d 783, 966 P.2d 891 (1998) (holding that the constitutional writ of certiorari under article IV, section 6 is legally unavailable where a right to appeal exists and the failure to appeal is not excused). "Substantial compliance has been defined as actual compliance in respect to the substance essential to every reasonable objective of the statute. It means a court should determine whether the statute has been followed sufficiently so as to carry out the intent for which the statute was adopted." *In re Habeas Corpus of Santore*, 28 Wn. App. 319, 327, 623 P.2d 702 (1981) (citation omitted).

¶28 Thus, while a superior court may be granted power to hear a case under article IV, section 6, that grant does not obviate procedural requirements established by the legislature. Article IV, section 6 pertains to both original trial jurisdiction and original appellate jurisdiction. Here, a LUPA action may invoke the original appellate jurisdiction of the superior court, but congruent with the explicit

---

[8] The Developers discussion of this issue is limited, and they provide no support for their argument that the statute of limitations, to challenge the legality of impact fees imposed as a condition the issuance of a building permit, should be governed by RCW 4.16.080(3), not LUPA. *See* Br. of Resp't's at 38-39.

objectives of the legislature in enacting LUPA, parties must substantially comply with procedural requirements before a superior court will exercise its original jurisdiction.

¶29 The Developers here were provided, by statute, with several avenues to challenge the legality of the impact fees imposed by the County and comply with the procedural requirements under chapter 82.02 RCW and LUPA. First, RCW 82.02.070(4) provides that applicants for building permits who desire immediate issuance of a permit but challenge the legality of the impact fee imposed as a condition of that permit may pay under protest, preserving the right to challenge those fees. Second, the Developers could have challenged the issuance of the building permits under the procedures provided under LUPA. However, rather than complying with either of these procedures provided by statute, the Developers waited almost three years before challenging the legality of the impact fees imposed by the County. The Developers have not complied with the procedures provided under LUPA and RCW 82.02.070(4) and are barred under LUPA from challenging the legality of the fees imposed.

¶30 As we stated in *Nykreim*, this court has long recognized the strong public policy evidenced in LUPA, supporting administrative finality in land use decisions. 146 Wn.2d at 931-32. The purpose and policy of the law in establishing definite time limits is to allow property owners to proceed with assurance in developing their property. Additionally, and particularly with respect to impact fees, the purpose and policy of chapter 82.02 RCW in correlation with the procedural requirements of LUPA ensure that local jurisdictions have timely notice of potential impact fee challenges. Without notice of these challenges, local jurisdictions would be less able to plan and fund construction of necessary public facilities. Absent enforcement of the requirements under chapter 82.02 RCW and LUPA, local jurisdictions would alternatively be faced with delaying necessary capacity improvements until the three-year statute of limitations for challenging impact fees had run.

¶31 Our conclusion here is consistent with one of the principal goals of the GMA, which is to "[e]nsure that those public facilities and services necessary to support development shall be adequate to serve the development *at the time the development is available for occupancy and use* without decreasing current service levels below locally established minimum standards." RCW 36.70A.020(12) (emphasis added). Additionally, the legislative purpose in enacting LUPA was to "establish[ ] uniform, expedited appeal procedures and uniform criteria for reviewing such decisions, in order to provide consistent, predictable, and timely judicial review." RCW 36.70C.010. Reviewing challenges to the imposition of impact fees as land use decisions furthers the legislative objectives of the GMA and LUPA. We find that conditions imposed on the issuance of permits are inextricable from land use decisions and are subject to the procedural requirements of LUPA. Because we find the Developers' claims are barred under LUPA, we need not reach the County's argument that the doctrine of equitable estoppel bars recovery.

## CONCLUSION

¶32 We reverse the judgment of the trial court and remand for further proceedings consistent with this opinion.

MADSEN, BRIDGE, OWENS, and FAIRHURST, JJ., concur.

¶33 SANDERS, J., (dissenting) — The majority claims Kitsap County need not disgorge $3,346,506 unlawfully exacted from developers because the developers' suit for refund was filed more than 21 days after the land use decisions in question.

¶34 From the outset the majority posits the question as:

[W]hether the imposition of impact fees as a condition on the issuance of a building permit is a "land use decision" subject to procedural requirements of the Land Use Protection Act (LUPA), chapter 36.70C RCW.

Majority at 577. The majority answers yes, but gives the right answer to the wrong question.

¶35 The proper question is whether the *developers' suit for a refund* of these impact fees is barred by the 21-day rule applicable to land use petitions through RCW 36-.70C.040(3).[9] The answer to *that* question is simply, and obviously, no.

¶36 That is the correct answer because the statute at issue, the Land Use Petition Act, specifically provides:

**Chapter exclusive means of judicial review of land use decisions-Exceptions.** (1) This chapter replaces the writ of certiorari for appeal of land use decisions and shall be the exclusive means of judicial review of land use decisions, *except that this chapter does not apply to*:

. . . .

(c) *Claims provided by any law for monetary damages or compensation.* If one or more claims for damages or compensation are set forth in the same complaint with a land use petition brought under this chapter, the claims are *not subject to the procedures and standards, including deadlines, provided in this chapter for review of the petition.* The judge who hears the land use petition may, if appropriate, preside at a trial for damages or compensation.

RCW 36.70C.030.

¶37 Although this statute is a complete refutation to the majority's claim that *all* actions arising from a "land use decision" as defined in RCW 36.70C.020 are subject to LUPA, there are also sound reasons why this is necessarily so.

¶38 Prior to the enactment of the LUPA statute, it was possible to either attack a land use decision through a statutory or constitutional writ of certiorari or maintain an action for monetary relief, or both. These actions could be pursued separately or consolidated.

---

[9] "The petition is timely if it is filed and served on all parties listed in subsection (2) of this section within twenty-one days of the issuance of the land use decision." RCW 36.70C.040(3).

¶39 However, an action challenging a land use decision through a writ of certiorari was problematic for a number of reasons, including uncertainty of when the petition for writ had to be served and filed, the necessary parties, etc. Therefore the legislature attempted to bring clarity, uniformity, and timely certainty to the resolution of permitting disputes through the enactment of LUPA, which expressly, and only, replaces the writ of certiorari. RCW 36.70C.030.

¶40 Under the prior regime there was never a legal requirement or necessity to initiate and prevail in a certiorari proceeding as a condition precedent to recovery of monetary relief, nor did the plaintiffs do so in *Henderson Homes, Inc. v. City of Bothell*, 124 Wn.2d 240, 877 P.2d 176 (1994).

¶41 There the plaintiffs were three companies which developed residential subdivisions within the city of Bothell. The city required the plaintiffs to pay it $400 per lot as a park-impact mitigation fee to satisfy a city-imposed preliminary plat approval condition. The suit was commenced slightly less than three years from the first impact fee payment. Bothell, however, argued that "the suit was time barred by a 30-day limitation in the platting statute." *Id.* at 241. The trial court rejected the city's argument, ordering a refund of the fees. The Court of Appeals, however, reversed, holding that the 30-day statute of limitations in former RCW 58.17.180 (1983) barred the action. Significant for our purposes is the fact that the developers maintained this as an independent action for the recovery of these impact fees without benefit of a writ of certiorari. The Supreme Court granted review, reversed the Court of Appeals, finding the three-year statute of limitations applicable:

> This court has consistently held that the 3-year statute of limitations, RCW 4.16.080(3), applies to actions to recover invalid taxes. The same principle applies to fees or charges, direct or indirect, on the subdivision of land when they do not comply with RCW 82.02.020. The underlying rationale for

applying the 3-year statute is solidly grounded and long established. Such suits "are actions arising out of implied liabilities to repay money unlawfully received". *Adams Cy. v. Ritzville State Bank*, 154 Wash. 140, 144, 281 P. 332 (1929). We applied the 3-year statute to a refund claim for an invalid tax as recently as *Robinson v. Seattle*, 119 Wn.2d 34, 83, 830 P.2d 318, *cert. denied*, 121 L. Ed. 2d 598 (1992).

*Id.* at 248. Therefore the three-year statute of limitations clearly applies to the nearly identical claim for a refund asserted in this action absent an intervening statute changing the rule. LUPA, however, does not change the rule because, "land use decision" or not, this chapter "does not apply to . . . [c]laims provided by any law for monetary damages or compensation." RCW 36.70C.030(1)(c). The 21-day rule in LUPA does not pertain to monetary claims but rather land use petitions which now replace statutory writs of certiorari. Monetary damages were not available under the writ of certiorari, and they are not available under LUPA. *See, e.g.*, RCW 7.16.030-.140; *Hayes v. City of Seattle*, 131 Wn.2d 706, 713-14, 934 P.2d 1179, 943 P.2d 265 (1997).[10]

¶42 The majority cites no case seeking monetary relief from any court of this state which has been barred under the LUPA statute. There is none. The majority makes it up as it goes along.

¶43 The majority also claims

At no time have the Developers argued that they are not subject to the procedural requirements of LUPA because their claims fall within one of the exceptions enumerated in RCW 36.70C.030(1). Rather, the Developers argue they are not subject to the 21-day time limitation of LUPA because the superior court has original jurisdiction here under article IV, section 6 of the Washington State Constitution.

---

[10] Shortly after LUPA's passage, one learned practitioner in a continuing legal education seminar stated "For various reasons, including the fact that little or no discovery is allowed, [LUPA] is not the means to decide claims for monetary damages or compensation." Patrick J. Schneider, *1995 Regulatory Reform Legislation, in* Wash. State Bar Ass'n, *Regulatory Reform, and Initiative 164*, at 2-23 (Continuing Legal Education, Aug. 1995) (on file with the Wash. State Law Library).

594

Majority at 586-87. If they did not make a claim of exception, it is probably because it is not their claim to make. A claim that an action is barred by the statute of limitations is an affirmative defense which must be pleaded and proved by the party who asserts it. CR 8(c). These developers never purported to proceed under the LUPA statute; the LUPA statute expressly excepts claims for monetary damage; the developers always proceeded under the general jurisdiction of the courts of this state. Moreover, we will affirm a trial court summary judgment even if the trial court came to the right result for the wrong legal reason (although I believe this trial court was correct). *Carey v. Reeve,* 56 Wn. App. 18, 23, 781 P.2d 904 (1989) (" 'We have held many times that where a judgment or order is correct, it will not be reversed merely because the trial court gave the wrong reason for its rendition.' " (quoting *Ertman v. City of Olympia,* 95 Wn.2d 105, 108, 621 P.2d 724 (1980))).

¶44 The majority acknowledges that the impact fee statutes permit such fees to be paid under protest, RCW 82.02.070(4), and 57 members of the class did so. Majority at 582, Clerk's Papers at 1001-06. Nothing in chapter 82.02 RCW specifically requires that a challenge to an impact fee paid under protest be brought under LUPA.[11] Rather, RCW 82.02.070(4) is a mechanism to get a permit while impact fee issues are resolved later.[12] It would be incongruous to allow an individual to get a permit by paying fees under protest but still have to bring a challenge to that very permit in order to preserve his challenge to the impact fees.

¶45 Further, the majority appears to require that a challenge to an impact fee imposed as a condition of the permit can be brought only by challenging the underlying

[11] Further, we have generally stated: "A party faced with an exaction of money . . . is not required to pay under protest or bring mandamus or other action as a prerequisite to the right of recovery of money so paid." *Puget Sound Alumni of Kappa Sigma, Inc. v. City of Seattle,* 70 Wn.2d 222, 230, 422 P.2d 799 (1967).

[12] In addition, the majority claims that "[t]he Developers have not complied with the procedures provided under . . . RCW 82.02.070(4)." Majority at 589. But there are no requirements in chapter 82.02 RCW that an individual pay under protest in order to challenge the legality of an impact fee.

permit. But this expressly contradicts the administrative procedures contained in RCW 82.02.070(4) and (5) and would ensure absurd results.

¶46 RCW 82.02.070(4) and (5) provide, in relevant parts:

(4) Impact fees may be paid under protest in order to obtain a permit or other approval of development activity.

(5) Each county, city, or town that imposes impact fees shall provide for an administrative appeals process for the appeal of an impact fee; the process may follow the appeal process for the underlying development approval or *the county, city, or town may establish a separate appeals process*.

¶47 *Therefore an administrative decision on impact fees may be issued at a different time than the decision on the underlying permit.* But under LUPA a "land use decision" is a decision on the permit. RCW 36.70C.030. Under the majority's decision, an individual challenging an impact fee may be required to file a LUPA petition for a permit granted to him before there has even been an administrative resolution of the legality of the impact fee.

¶48 This is an absurd result which will squander administrative and judicial resources. "We do not interpret statutes to reach absurd and fundamentally unjust results." *Flanigan v. Dep't of Labor & Indus.*, 123 Wn.2d 418, 426, 869 P.2d 14 (1994).

¶49 Ultimately the majority's position finds its final repose in its asserted "public policy" to "ensure that local jurisdictions have timely notice of potential impact fee challenges. Without notice of these challenges, local jurisdictions would be less able to plan and fund construction of necessary public facilities." Majority at 589. This is the real basis for the majority decision—not the law as it exists. I can find no support for this alleged public policy in LUPA nor in our case law. If the majority thinks it is good "public policy" to allow local governments to keep millions of dollars of ill-gotten gains every time a private citizen fails to file suit within 21 days of the event, then the argument should be made to the legislature, not this court. When persons,

governments, or other entities unlawfully obtain money from others, I see no reason why they should be able to immunize themselves from liability for their wrongful conduct. Return the money! Certainly the legislature has not spoken to the contrary.

¶50  I therefore dissent.

ALEXANDER, C.J., and IRELAND, J. Pro Tem., concur with SANDERS, J.

¶51  CHAMBERS, J., (concurring in dissent) — I concur with the dissent in result, but only as to those developers who paid under protest.

Reconsideration denied November 2, 2005.