[No. 40923-2-II.   Division Two.   February 1, 2012.]

WELLS FARGO BANK, NA, *Appellant*, v. THE DEPARTMENT OF
REVENUE, *Respondent*.

344

*Michele G. Radosevich* and *Dirk J. Giseburt* (of *Davis Wright Tremaine LLP*), for appellant.

*Robert M. McKenna, Attorney General,* and *Rosann Fitzpatrick, Assistant,* for respondent.

¶1 VAN DEREN, J. — Wells Fargo Bank NA appeals from the superior court's order denying its summary judgment motion and granting summary judgment to the Washington State Department of Revenue (DOR). Wells Fargo contends that (1) RCW 82.32.060(4) required payment of interest on a refund arising from settlement of a tax dispute through a closing agreement with DOR and (2) Wells Fargo did not waive its statutory right to interest in entering the closing agreement. DOR cross appeals, contending that the trial court erred in denying its motion to dismiss for lack of jurisdiction under chapter 34.05 RCW, the Washington Administrative Procedure Act (APA), because Wells Fargo failed to file its action within 30 days of DOR's final decision denying interest. We agree with DOR, decline to reach the merits of this case, and reverse and remand for

dismissal of Wells Fargo's action because the superior court could not exercise jurisdiction over the matter due to Wells Fargo's untimely appeal following DOR's decision denying interest in addition to the final agreed settlement amount.

## FACTS

¶2 Wells Fargo filed a series of tax refund requests with DOR. After auditing Wells Fargo's financial records, DOR's audit division granted the refund requests in part and denied them in part. Wells Fargo filed appeal petitions with DOR to contest the partial denials. At a hearing, Wells Fargo's tax counsel informed the administrative law judge (ALJ)[1] assigned to the appeals that Wells Fargo wished to settle the appeals.

¶3 Wells Fargo and DOR (through the ALJ) exchanged a series of offers and counteroffers, resulting in DOR's accepting Wells Fargo's counteroffer for a "total refund" of $1,997,685. Clerk's Papers (CP) at 425. During negotiations neither party discussed whether interest was included in this settlement amount. The negotiations ultimately resulted in the execution of a closing agreement authorized by RCW 82.32.350.

¶4 The closing agreement recited, "[DOR] has denied portions of refund requests submitted by [Wells Fargo] seeking the refund of business and occupation tax remitted by [Wells Fargo]." CP at 953. It then recited the refund requests, the applicable refund period for each request, and the dollar amount of taxes disputed in each refund request. The closing agreement further recited, "[DOR] and [Wells Fargo] acknowledge the complexity of the factual and/or legal issues underlying the assessments, as well as the expense and uncertainty of administrative and/or judicial

---

[1] In its briefing, DOR states that due to the informal and nonadversarial appeal proceedings, its ALJs are not third-party neutrals but employees of DOR " 'trained in the interpretation of the Revenue Act and precedents established by prior rulings and court decisions.' " Br. of Resp't at 3 (quoting WAC 458-20-100(5)).

proceedings, and agree it is in their mutual interest to compromise and settle all issues relating to these assessments." CP at 953.

¶5 The agreement's provisions followed the recitals, including:

> 1. [DOR] will refund $1,997,685 to [Wells Fargo].
>
> 2. Execution of this agreement by [DOR] and [Wells Fargo] operates as a dismissal, with prejudice, of [Wells Fargo's] petitions for refund now pending before [DOR's] Appeals Division and as an unconditional waiver by [Wells Fargo] of any right to further challenge the assessments or [DOR] to pursue collection of the assessment in any administrative or judicial proceeding.
>
> . . . .
>
> 8. This agreement, and the documents executed in accordance with the provisions hereof, embrace and include the entire transaction between the parties and may not be changed except upon the written assent of all parties hereto.

CP at 954.

¶6 On April 1, 2008, DOR issued Wells Fargo a refund check for $1,997,685. On April 7, Wells Fargo's tax counsel e-mailed the ALJ, asking, "[I]s there some reason interest was not included [in the refund check]?" CP at 965. On April 9, the ALJ replied, stating that Wells Fargo's counteroffer was for a " 'total refund amount,' " that "the amount negotiated was the total refund," and that "[i]nterest is not automatically included in settlements" and must be specifically requested and negotiated. CP at 964-65. On April 11, Wells Fargo sent a letter to the ALJ, protesting the payment of its refund without interest and stating that RCW 82.32.060 required payment of interest on its refund. The ALJ replied the same day, stating that she had notified her supervisor, the assistant director of DOR's Appeals Division, of the matter and that the assistant director would provide a response.

¶7 On April 15, the assistant director replied with a letter stating that settlements do not automatically include

interest, the closing agreement was "a negotiated compromise of the total disputed liability," "the payment made constituted the total settlement amount," and the closing agreement was "final and conclusive of tax liability or immunity." CP at 972-73. The letter concluded, "I hope this clarifies why the payment made constituted the total settlement amount. Please contact me . . . if you require additional information." CP at 973. Wells Fargo's tax counsel understood from the letter that DOR did not intend to take any further action regarding Wells Fargo's claim.

¶8 Over five months later, on September 22, 2008, Wells Fargo's outside counsel sent a demand letter to the senior assistant attorney general, reiterating its claim that RCW 82.32.060 entitled it to interest on its refund, referring to the April 15 letter as "rejecting" Wells Fargo's interest claim, and requesting that the senior assistant attorney general "advise [DOR] of its error so that the issue [could] be resolved short of litigation." CP at 991. Wells Fargo stated it would file suit if a "satisfactory interest payment" was not arranged within 60 days. CP at 991.

¶9 According to Wells Fargo's outside counsel, the Senior Assistant Attorney General called, said he would discuss the issue with DOR, and requested that Wells Fargo contact him before suing to prompt a response from DOR. After expiration of the 60-day period, Wells Fargo again asked the senior assistant attorney general whether DOR was responding to its claim. A few days later, the assistant director of DOR's Appeals Division contacted Wells Fargo, said DOR would like to resolve the matter short of litigation, and made a settlement offer. The parties exchanged further counteroffers, apparently without reaching agreement.

¶10 On January 22, 2009, Wells Fargo sued DOR in superior court, alleging that the trial court had jurisdiction under RCW 2.08.010, RCW 7.24.010, and the APA. Wells Fargo's complaint stated in part that "[DOR's] failure to perform its statutory duty to pay interest on Wells Fargo's tax refund [wa]s arbitrary and capricious and contrary to

law" and sought, in part, a declaratory judgment that Wells Fargo was entitled to interest on its tax refund and a judgment ordering DOR to pay interest. CP at 5. After DOR unsuccessfully moved under CR 12(b)(1) to dismiss Wells Fargo's complaint as untimely under the APA, Wells Fargo amended its complaint. The amended complaint still requested a declaratory judgment. DOR then counterclaimed for the amount it had paid Wells Fargo under the closing agreement. Both parties moved for summary judgment on Wells Fargo's claims. The superior court granted summary judgment to DOR and denied Wells Fargo's motion.

¶11 Wells Fargo appeals the superior court order denying its summary judgment motion. DOR cross appeals the superior court's order denying its motion to dismiss because Wells Fargo did not file a timely action under the APA before proceeding to superior court. We heard oral argument on September 9, 2011.

¶12 During oral argument, the parties raised the issue of continuing negotiations on the interest dispute. Following oral argument, we ordered supplemental briefing on the issue of when the 30-day period began to run for purposes of appealing, under the APA, DOR's rejection of Wells Fargo's claims. DOR responded that the April 15, 2008 letter remained its final action on the tax refund claim, but if it was not, then its final settlement offer on the interest dispute still occurred more than 30 days before Wells Fargo filed its lawsuit. DOR included a December 12, 2008 e-mail correspondence between the parties about their settlement negotiations, but this document was not admitted at the superior court and DOR did not move to supplement the record with it; thus, we do not consider this document. RAP 10.3(a)(8) ("An appendix to [a] brief . . . may not include materials not contained in the record on review without permission from [us], except as provided in rule 10.4(c)."). Wells Fargo maintains that the 30-day filing requirement of the APA does not apply in this case because there was no final order by DOR.

## ANALYSIS

¶13  DOR argues that the superior court erred in denying its motion to dismiss because Wells Fargo did not timely file its challenge to DOR's action under the APA. Wells Fargo responds that (1) DOR's denial of its interest claim was an agency action excluded from the APA's procedures; (2) Wells Fargo's interest claim fell under exceptions to the APA's judicial review procedures; (3) DOR's April 15 letter denying its interest claim was not a final agency action; and (4) even if the APA applied and DOR's April 15 letter was a final agency action, Wells Fargo's claim was a contract claim over which the superior court could alternatively exercise original jurisdiction. We agree with DOR that Wells Fargo untimely filed its lawsuit under the APA and, thus, Wells Fargo's claims fail.

## I. AGENCY ACTION GOVERNED BY THE ADMINISTRATIVE PROCEDURE ACT

### A. Standard of Review

¶14  We review de novo a motion to dismiss under CR 12(b)(1). *Todric Corp. v. Dep't of Revenue*, 109 Wn. App. 785, 788 n.2, 37 P.3d 1238 (2002). We also review de novo issues of statutory interpretation. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9, 43 P.3d 4 (2002). Our fundamental objective in statutory interpretation is to give effect to the legislature's intent. *Campbell & Gwinn*, 146 Wn.2d at 9. If a statute's meaning is plain on its face, then we give effect to that plain meaning as an expression of legislative intent. *State ex rel. Citizens Against Tolls (CAT) v. Murphy*, 151 Wn.2d 226, 242, 88 P.3d 375 (2004). We discern plain meaning not only from the provision in question but also from closely related statutes and the underlying legislative purposes. *CAT*, 151 Wn.2d at 242. If a statute is susceptible to more than one reasonable interpretation after this inquiry, then the statute is am-

biguous and we may resort to additional canons of statutory construction or legislative history. *Campbell & Gwinn*, 146 Wn.2d at 12.

■ ■ ¶15 We give effect to all statutory language, considering statutory provisions in relation to each other and harmonizing them to ensure proper construction. *King County v. Cent. Puget Sound Growth Mgmt. Hearings Bd.*, 142 Wn.2d 543, 560, 14 P.3d 133 (2000). We avoid construing a statute in a manner that results in "unlikely, absurd, or strained consequences." *Glaubach v. Regence BlueShield*, 149 Wn.2d 827, 833, 74 P.3d 115 (2003).

B. Agency Action Exclusions

¶16 RCW 34.05.510 provides, "This chapter establishes the exclusive means of judicial review of agency action." RCW 34.05.010(3) provides:

> "Agency action" means licensing, the implementation or enforcement of a statute, the adoption or application of an agency rule or order, the imposition of sanctions, or the granting or withholding of benefits.
>
> Agency action does not include an agency decision regarding (a) contracting or procurement of goods, services, public works, and the purchase, lease, or acquisition by any other means, including eminent domain, of real estate, as well as all activities necessarily related to those functions, or (b) determinations as to the sufficiency of a showing of interest filed in support of a representation petition, or mediation or conciliation of labor disputes or arbitration of labor disputes under a collective bargaining law or similar statute, or (c) any sale, lease, contract, or other proprietary decision in the management of public lands or real property interests, or (d) the granting of a license, franchise, or permission for the use of trademarks, symbols, and similar property owned or controlled by the agency.

¶17 In *Muckleshoot Indian Tribe v. Department of Ecology*, 112 Wn. App. 712, 718, 50 P.3d 668 (2002), Division One of this court considered whether an "Instream Flow Agree-

ment" executed among the City of Seattle, the Department of Ecology (DOE), and other parties was reviewable under the APA as an agency action. The court observed that the agreement could be "characterized as an implementation" of statutes authorizing DOE "to establish minimum water flows in public waters to protect fish, game, birds or other wildlife resources, and to appropriate water rights." *Muckleshoot Indian Tribe*, 112 Wn. App. at 719. Division One ultimately concluded:

> [T]he Instream Flow Agreement is not a "contract, or other proprietary decision in the management of public lands or real property interests" as that term is meant in RCW 34.05-.010(3)(c). In this case, the agency decision concerns the exercise of regulatory power to set instream flows by rule under RCW 90.22.010 and RCW 90.54.040, or to initiate an adjudication among water right holders under RCW 90.03.110. These decisions are not proprietary management decisions concerning the State's public lands or real property interests, but are decisions concerning governmental or regulatory powers. Thus, the exclusion does not apply, and the decision is governed by the review provisions of the [ ]APA.

*Muckleshoot Indian Tribe*, 112 Wn. App. at 723.

¶18 Here, RCW 82.32.350, which governs closing agreements, provides, "[DOR] may enter into an agreement in writing with any person relating to the liability of such person in respect of any tax imposed by any of the preceding chapters of this title for any taxable period or periods." Accordingly, the closing agreement between DOR and Wells Fargo was an implementation of DOR's regulatory authority under RCW 82.32.350 to resolve tax disputes through settlement. Further, neither the closing agreement nor DOR's subsequent denial of Wells Fargo's interest request involved "contracting or procurement of goods, services, [or] public works" or a "contract, or other proprietary decision in the management of public lands or real property interests." RCW 34.05.010(3)(a), (c). Thus, none of the exclusions applied, and the closing agreement was an agency action the APA governed.

## C. Judicial Review Exceptions

█ ¶19 RCW 34.05.510 provides:

This chapter establishes the exclusive means of judicial review of agency action, except:

(1) The provisions of this chapter for judicial review do not apply to litigation in which the sole issue is a claim for money damages or compensation and the agency whose action is at issue does not have statutory authority to determine the claim.

. . . .

(3) To the extent that de novo review or jury trial review of agency action is expressly authorized by provision of law.

¶20 Here, Wells Fargo's amended complaint contained a request for a declaratory judgment. Thus, its action did not fit within the exception for suits limited to money damages. *See Judd v. Am. Tel. & Tel. Co.*, 152 Wn.2d 195, 204-05, 95 P.3d 337 (2004) (action did not fall within the APA's money damages exception because it contained a request for injunctive relief).

█ ¶21 Moreover, when the legislature amended RCW 34.05.510 in 1988, it provided two examples that fall within the de novo review exception of RCW 34.05.510(3): RCW 51.52.115 and RCW 82.32.180. 1 Senate Journal, 50th Leg., Reg. Sess., at 627 cmt. 65 (Wash. 1987); Laws of 1988, ch. 288, § 501. Both statutes expressly provide for de novo review in the superior court following administrative review.[2] In contrast, neither RCW 82.32.350 nor RCW

---

[2] RCW 51.52.115 provides, "Upon appeals to the superior court only such issues of law or fact may be raised as were properly included in the notice of appeal to the board, or in the complete record of the proceedings before the board. The hearing in the superior court shall be de novo."

RCW 82.32.180 provides, "The trial in the superior court on appeal shall be de novo and without the necessity of any pleadings other than the notice of appeal."

We further note that neither DOR nor Wells Fargo argue that RCW 82.32-.180, which allows de novo judicial review of "orders of the board of tax appeals which result from 'informal' proceedings" under RCW 82.32.160, applies here. 1 Senate Journal, 50th Leg., Reg. Sess., at 627 cmt. 65 (Wash. 1987). Even if RCW

82.32.360,[3] which address closing agreements, provides for de novo review in the superior court. And Wells Fargo fails to point to any other statute expressly authorizing de novo review of closing agreements in the superior court. Thus, its claim that closing agreements fall within RCW 34.05.510's exceptions to the APA's judicial review procedures, such that we would review this action de novo without reference to the APA and its procedures and standards of review, fails.

### D. Final Agency Action

■■ ¶22 Wells Fargo also claims that the APA does not contain a finality requirement for judicial review of "other" agency action under RCW 34.05.542(3) or RCW 34.05-.570(4) and that the April 15, 2008 letter denying interest in addition to the negotiated settlement of all issues relating to these assessments was not a final agency action triggering the 30-day appeal period under the APA. We disagree.

¶23 RCW 34.05.570(4) provides for judicial review of agency action other than agency rulemaking or agency orders entered in adjudicative proceedings. RCW 34.05-.542(3) provides, "A petition for judicial review of agency action other than the adoption of a rule or the entry of an order is not timely unless filed with the court . . . within thirty days after the agency action."

---

82.32.180 applied, it also possesses a 30-day filing period; thus, as we discuss below, Wells Fargo failed to timely file its action within 30 days of DOR's April 15, 2008 letter, its final agency action.

[3] RCW 82.32.360 provides:

Upon approval of such agreement, evidenced by execution thereof by the [DOR] and the person so agreeing, the agreement shall be final and conclusive as to tax liability or tax immunity covered thereby, and, except upon a showing of fraud or malfeasance, or of misrepresentation of a material fact:

(1) The case shall not be reopened as to the matters agreed upon, or the agreement modified, by any officer, employee, or agent of the state, or the taxpayer, and

(2) In any suit, action or proceeding, such agreement, or any determination, assessment, collection, payment, abatement, refund, or credit made in accordance therewith, shall not be annulled, modified, set aside, or disregarded.

¶24 Wells Fargo correctly observes that neither RCW 34.05.570(4) nor RCW 34.05.542(3) contains an express finality requirement for reviewing other agency action. But read together, they require a complaining party to file its action within 30 days of the complained of agency action. Here, that action is DOR's refusal to pay interest in addition to the negotiated settlement amount, which was clearly communicated to Wells Fargo on April 15, 2008.

¶25 The legislature has expressly stated that the APA's purpose is "to achieve greater consistency with other states and the federal government in administrative procedure," and, thus, "courts should interpret provisions of [the APA] consistently with decisions of other courts interpreting similar provisions of other states, the federal government, and model acts." RCW 34.05.001. The United States Supreme Court has observed under the federal APA that "[t]he strong presumption is that judicial review will be available only when agency action becomes final." *Bell v. New Jersey*, 461 U.S. 773, 778, 103 S. Ct. 2187, 76 L. Ed. 2d 312 (1983); *see also* 5 U.S.C. § 704 ("Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review.").

¶26 The omission of an express statement that finality is required in RCW 34.05.542(3) and RCW 34.05.570(4), when viewed in light of the legislature's directive to interpret Washington's APA consistently with federal administrative law, is not enough to overcome the presumption that courts may review only final agency actions. *See Carolina Power & Light. Co. v. U.S. Dep't of Labor*, 43 F.3d 912, 914 (4th Cir. 1995) (inferring finality requirement even though judicial review statute did not expressly limit appeals to "final" orders); *see also Jim Walter Res., Inc. v. Fed. Mine Safety & Health Review Comm'n*, 920 F.2d 738, 743 (11th Cir. 1990) ("Although the statute uses the term 'order' rather than 'final order,' this omission alone is insufficient to overcome the general presumption that judicial review of administrative actions is available only when such decisions have

become final."); *Carter/Mondale Presidential Comm., Inc. v. Fed. Election Comm'n*, 229 U.S. App. D.C. 1, 6 n.9, 711 F.2d 279 (1983) (implying finality requirement where statute permitted judicial review of "agency action" by Federal Elections Commission). Thus, we hold that only final agency actions are subject to judicial review under RCW 34.05.542(3) and RCW 34.05.570(4).

¶27 An agency action is " 'final' " when it "imposes an obligation, denies a right, or fixes a legal relationship as a consummation of the administrative process." *Bock v. State Bd. of Pilotage Comm'rs*, 91 Wn.2d 94, 99, 586 P.2d 1173 (1978). We may look to the parties' actions as evidence of their understanding of agency action's finality. *See Bock*, 91 Wn.2d at 99. Here, DOR's April 15 letter stated that closing agreements do not automatically include interest and that the closing agreement was final and conclusive; thus, the letter was a denial of Wells Fargo's alleged right to interest on the refund. The letter's statement, "I hope this clarifies why the payment made constituted the total settlement amount. Please contact me . . . if you require additional information," was at most an offer to further explain "why the payment made constituted the total settlement amount." CP at 973.

¶28 Wells Fargo's tax counsel stated that he understood from DOR's April 15 letter that DOR did not intend to take any further action regarding Wells Fargo's interest claim; and Wells Fargo's September 22 demand letter referred to DOR's letter as "rejecting" its interest claim. CP at 992. Thus, Wells Fargo's actions demonstrated its understanding that DOR's April 15 letter was a final rejection of Wells Fargo's interest claim.

¶29 Wells Fargo, citing *Valley View Industrial Park v. City of Redmond*, 107 Wn.2d 621, 733 P.2d 182 (1987), argues that DOR's subsequent settlement negotiations and offers of settlement in the months following its April 15 letter demonstrate that its April 15 letter was not a final rejection of Wells Fargo's claims. But in *Valley View*, our

Supreme Court held that the city's letter stating that Valley View's building permits had lapsed was not a "final" order because (1) "the City lacked a clear administrative decision-making process regarding building permit lapses" and (2) after the City sent the letter, it "twice assured Valley View that it still had vested rights in the buildings." 107 Wn.2d at 634-35. In contrast, here DOR's April 15 letter clearly stated that the closing agreement constituted a final settlement of Wells Fargo's claims, including interest, and DOR's subsequent communications constituted settlement negotiations regarding Wells Fargo's interest demand, not acknowledgements that Wells Fargo had any right to interest.

¶30 Finally, RCW 34.05.060 provides, "Except to the extent precluded by another provision of law and subject to approval by agency order, informal settlement of matters that may make unnecessary more elaborate proceedings under this chapter is strongly encouraged." If we were to hold that DOR's later attempts to settle the interest issue negated the finality of its action, we would undermine the legislature's express policy favoring resolution of disputes outside the APA's judicial review provisions. Thus, DOR's settlement discussions five months after its denial of Wells Fargo's interest request do not negate the finality of its rejection of the interest claim.

II. APA Procedures Control Challenges to Agency Action

¶31 Wells Fargo also argues that even if the APA applied to its challenge, its claim was a common law contract claim against the State over which the superior court could properly exercise its original jurisdiction under RCW 4.92-.010 and RCW 2.08.010. We disagree.

A. RCW 4.92.010

¶32 RCW 4.92.010 provides, "Any person or corporation having any claim against the state of Washington shall have a right of action against the state in the

superior court." RCW 4.92.010 confers subject matter jurisdiction on superior courts to hear claims against the State. *J.A. v. State*, 120 Wn. App. 654, 658, 86 P.3d 202 (2004).

¶33 Through RCW 4.92.010, "the State has waived its sovereign immunity from lawsuits of various types." *Architectural Woods, Inc. v. State*, 92 Wn.2d 521, 527, 598 P.2d 1372 (1979).[4] Because RCW 4.92.010 created the right to sue the State, it is not a fundamental right; thus, because the State gave the right to sue it, the State can prescribe limitations on that right. *See Medina v. Pub. Util. Dist. No. 1 of Benton County*, 147 Wn.2d 303, 312, 53 P.3d 993 (2002). Moreover, "where one statute deals with a subject in general terms and another deals with the same subject in a more detailed way, the two should be harmonized if possible and, if there is any conflict, the specific prevails over the general absent a contrary legislative intent." *Cingular Wireless, LLC v. Thurston County*, 131 Wn. App. 756, 774, 129 P.3d 300 (2006).

¶34 Here, the legislature created a general right to sue the State under RCW 4.92.010. But it specifically set limitations on challenges to state agency actions, expressly stating its intent that the APA "establishe[d] the exclusive means of judicial review of agency action." RCW 34.05.510. Harmonizing RCW 4.92.010 and the APA, the legislature intended to limit legal claims involving agency actions to the APA's procedures. To the extent RCW 4.92.010 and the APA conflict, the APA's specific procedures control.

---

[4] Wells Fargo cites *Architectural Woods* and *Riley Pleas, Inc. v. State*, 88 Wn.2d 933, 568 P.2d 780 (1977), to support its claim that its action was not subject exclusively to the APA's procedural requirements. But both cases were decided before the legislature amended the APA to establish it as the "the exclusive means of judicial review of agency action." LAWS OF 1988, ch. 288, § 501. To the extent, if any, that they conflict with the APA's current provisions, they are no longer good law.

## B. RCW 2.08.010

¶35 RCW 2.08.010 implemented article IV, section 6[5] of our state constitution and provides:

> The superior court shall have original jurisdiction in all cases in equity, and in all cases at law which involve the title or possession of real property, or the legality of any tax, impost,[6] assessment, toll or municipal fine, and in all other cases in which the demand or the value of the property in controversy amounts to three hundred dollars.

*City of Tacoma v. Mary Kay, Inc.*, 117 Wn. App. 111, 114-15, 70 P.3d 144 (2003). Accordingly, RCW 2.08.010 confers on the superior courts original subject matter jurisdiction over the stated types of claims. Those claims do not include the superior court's original appellate jurisdiction in cases originating in agency actions governed by the APA.

¶36 In *James v. Kitsap County*, our Supreme Court addressed the relationship between original jurisdiction and specific statutory procedures for bringing claims. 154 Wn.2d 574, 587-89, 115 P.3d 286 (2005). Developers argued that their challenges to Kitsap County's imposition of impact fees as a condition for issuance of building permits were not subject to the 21-day time limitation of chapter 36.70C RCW, the Land Use Petition Act (LUPA), because the superior court had original jurisdiction under article IV, section 6. *James*, 154 Wn.2d at 587. The developers further argued that because the superior court had original jurisdiction, their challenges were subject to more general

---

[5] Article IV, section 6 provides:

The superior court shall have original jurisdiction in all cases at law which involve the title or possession of real property, or the legality of any tax, impost, assessment, toll, or municipal fine, and in all other cases in which the demand or the value of the property in controversy amounts to three thousand dollars or as otherwise determined by law, or a lesser sum in excess of the jurisdiction granted to justices of the peace and other inferior courts.

[6] Dictionaries define "impost" as "[a] tax or duty, esp[ecially] a customs duty" or "something imposed or levied." BLACK'S LAW DICTIONARY 824 (9th ed. 2009); WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1136 (2002).

procedural requirements, including a three-year statute of limitations, and not LUPA's requirements. *James*, 154 Wn.2d at 587.

¶37 Our Supreme Court disagreed. *James*, 154 Wn.2d at 587. It observed that LUPA by its own terms was "the 'exclusive means of judicial review of land use decisions . . . .' " *James*, 154 Wn.2d at 587 (emphasis omitted) (alteration in original) (quoting RCW 36.70C.030(1)). The court further observed that "where statutes prescribe procedures for the resolution of a particular type of dispute, state courts have required substantial compliance or satisfaction of the spirit of the procedural requirements before they will exercise jurisdiction over the matter." *James*, 154 Wn.2d at 588. Finally, the court concluded:

> [W]hile a superior court may be granted power to hear a case under article IV, section 6, that grant does not obviate procedural requirements established by the legislature. Article IV, section 6 pertains to both original trial jurisdiction and original appellate jurisdiction. Here, a LUPA action may invoke the original appellate jurisdiction of the superior court, but congruent with the explicit objectives of the legislature in enacting LUPA, parties must substantially comply with procedural requirements before a superior court will exercise its original jurisdiction.

*James*, 154 Wn.2d at 588-89.

¶38 RCW 2.08.010 mirrors and implements article IV, section 6. And like LUPA, the APA provides "the exclusive means of judicial review of agency action." RCW 34.05.510. Accordingly, before a challenge to agency action may invoke the superior court's original appellate jurisdiction, parties must substantially comply with the APA's procedural requirements. Wells Fargo has not done so.

¶39 DOR's denial of Wells Fargo's demand that DOR pay interest on the settlement amount was neither agency rule making nor an order entered in an adjudicative proceeding;

thus, it was "other agency action" falling under RCW 34.05.570(4).[7] RCW 34.05.542(3) provides:

> A petition for judicial review of agency action other than the adoption of a rule or the entry of an order is not timely unless filed with the court and served on the agency, the office of the attorney general, and all other parties of record within thirty days after the agency action, but the time is extended during any period that the petitioner did not know and was under no duty to discover or could not reasonably have discovered that the agency had taken the action or that the agency action had a sufficient effect to confer standing upon the petitioner to obtain judicial review under this chapter.

¶40 When presented with whether untimely service can constitute substantial compliance with a statute of limitations, our Supreme Court compared the situation to substantial compliance by timely but procedurally defective service. *City of Seattle v. Pub. Emp't Relations Comm'n*, 116 Wn.2d 923, 927-29, 809 P.2d 1377 (1991). It held:

> It is impossible to substantially comply with a statutory time limit in the same way [as effectuating timely but procedurally defective service]. It is either complied with or it is not. Service after the time limit cannot be considered to have been actual service within the time limit. We therefore hold that failure to comply with a statutorily set time limitation cannot be considered substantial compliance with that statute.

*Pub. Emp't Relations Comm'n*, 116 Wn.2d at 928-29.

¶41 RCW 34.05.530 provides:

> A person has standing to obtain judicial review of agency action if that person is aggrieved or adversely affected by the agency

---

[7] Wells Fargo contends that RCW 34.05.570(4)'s procedures would be "ill-suited" for review of its interest claim. Reply Br. of Appellant at 7. But RCW 34.05.570(4)(b) permits the trial court to admit new evidence on material issues of fact under RCW 34.05.562; and RCW 34.05.570(4)(c)(ii) and RCW 34.05-.570(4)(c)(iii) allow the trial court to grant relief to a party if the agency action was "[o]utside the statutory authority of the agency" or "[a]rbitrary or capricious." Thus, the trial court could have admitted any necessary evidence to determine material facts regarding the interest claim and could have set aside DOR's refusal to pay interest as outside its statutory authority or arbitrary or capricious. Wells Fargo's argument that RCW 34.05.570(4) does not apply fails.

action. A person is aggrieved or adversely affected within the meaning of this section only when all three of the following conditions are present:

(1) The agency action has prejudiced or is likely to prejudice that person;

(2) That person's asserted interests are among those that the agency was required to consider when it engaged in the agency action challenged; and

(3) A judgment in favor of that person would substantially eliminate or redress the prejudice to that person caused or likely to be caused by the agency action.

¶42 Here, on receipt of the April 15, 2008 letter, Wells Fargo knew that DOR rejected paying interest on its refund. Furthermore, the three RCW 34.05.530 conditions were met at that time: Wells Fargo was prejudiced by DOR's denial of its interest request, its asserted interests were considered when DOR rejected Wells Fargo's request, and a judgment in Wells Fargo's favor would have redressed the prejudice caused to it by DOR's denial of its interest request. Accordingly, the 30-day period for challenging DOR's denial of Wells Fargo's interest request began running when DOR rejected the claim in the April 15 letter.

¶43 Because Wells Fargo did not file or serve this action until January 22, 2009, over 9 months after DOR's April 15 decision, we cannot consider Wells Fargo's failure to comply with the APA's 30-day filing period as substantial compliance with the statute's procedural requirements.[8] Thus, the superior court could not exercise original appellate jurisdiction over the matter. *James*, 154 Wn.2d at 589. Accordingly, the superior court erred in denying DOR's motion to dismiss based on Wells Fargo's failure to timely file its appeal

---

[8] Wells Fargo also argues that DOR's settlement discussions after it received Wells Fargo's September 22, 2008 demand letter equitably estopped DOR from claiming that Wells Fargo untimely filed this action. Equitable estoppel may apply where a party detrimentally relies on an admission, statement, or act by another party. *Campbell & Gwinn*, 146 Wn.2d at 19. Here, Wells Fargo could not have detrimentally relied on actions occurring over 5 months later when it had failed to file its action within 30 days of DOR's April 15 letter.

under the APA. We reverse and remand for entry of an order dismissing the case. Because we dismiss based on Wells Fargo's untimely appeal, we do not address Wells Fargo's other challenges on appeal.

Hunt and Johanson, JJ., concur.

Review denied at 175 Wn.2d 1009 (2012).