[No. 40104-5-II. Division Two. August 3, 2010.]

BRAD CHINN, *Respondent*, v. THE CITY OF SPOKANE ET AL., *Appellants*.

*Howard F. Delaney, City Attorney*, and *Michael J. Piccolo, Assistant*; and *Stacy A. Bjordahl* (of *Parsons/Burnett/ Bjordahl LLP*), for appellants.

*Lisa J. Dickinson* (of *Dickinson Law Firm PLLC*), for respondent.

¶1 BRIDGEWATER, J. — West Central Development LLC (West) appeals the superior court's decision to grant Brad Chinn's land use petition. Chinn filed the petition because he disagreed with the Spokane City Council's (Council) decision to grant West a rezone. We hold that the Council misinterpreted the law in concluding that the rezone would not change the underlying land use. We further hold that the Council erroneously applied the law to the facts. We reverse the Council's decision and reinstate the hearing examiner's decision consistent with this opinion.

## FACTS

¶2 West applied to rezone a block, consisting of eight city lots (Property) in Spokane, Washington, from "Office" to "Office Retail."[1] Certified Appeal Board Record (CABR) § 1, at 9; Spokane Municipal Code (SMC) 17C.120.030(A), (B). Except for the county courthouse,[2] which borders the Property's eastern boundary, the land surrounding the Property is zoned Office and is developed with small scale offices, many of which are in former residences.

¶3 After West applied for the rezone, the city planning services recommended that the hearing examiner approve West's rezone application with certain conditions. During the comment period before the hearing, several neighboring landowners, including Chinn, wrote letters opposing the rezone.

---

[1] More specifically, West requested a rezone from Office with a 35-foot height restriction to Office Retail with a 150-foot height restriction. For clarity and consistency, we omit the height designation and refer to the zones as "Office" and "Office Retail."

[2] The courthouse is zoned for "Community Business" with a 150-foot height restriction.

¶4 The hearing examiner denied West's rezone application. The hearing examiner concluded that because Office Retail is a higher intensity office use and because the Property was not within a city center, the rezone was inconsistent with the Spokane comprehensive plan policy of directing higher intensity office uses to centers.

¶5 West appealed to the Council, which reversed the hearing examiner and approved West's rezone application. The Council found that the comprehensive plan permitted office uses outside of a center if the use was within the boundaries of existing office designations. Because the Property was currently zoned for office use and because West applied for a rezone that included office use, the Council concluded that the underlying land use did not change in a rezone from Office to Office Retail.

¶6 Chinn disagreed with the Council's decision and filed a petition under the Land Use Petition Act (LUPA), chapter 36.70C RCW, to challenge the decision in superior court. The superior court reversed the Council's decision because the Council failed to consider the "retail aspect" of rezoning from Office to Office Retail. Clerk's Papers (CP) at 118. The city of Spokane and West now appeal.

## ANALYSIS

■ ■ ¶7 Under LUPA, we stand in the shoes of the superior court and limit our review to the record before the Council. *Pinecrest Homeowners Ass'n v. Glen A. Cloninger & Assocs.*, 151 Wn.2d 279, 288, 87 P.3d 1176 (2004). As the party seeking relief from the land use decision, Chinn bears the burden of meeting one of RCW 36.70C.130(1)'s six standards. *Pinecrest*, 151 Wn.2d at 288. Given the facts of this case, the relevant standards of review are whether the Council's land use decision is (1) an erroneous interpretation of the law or (2) a clearly erroneous application of law to the facts. RCW 36.70C.130(1)(b), (d).[3]

---

[3] RCW 36.70C.130(1) provides in relevant part:

██ ¶8 We accord deference to the Council's expertise and review de novo any claimed error of law in how the Council interpreted city ordinances. *Pinecrest*, 151 Wn.2d at 290. We are also deferential to the factual findings of the highest forum below that exercised fact-finding authority. *Citizens to Pres. Pioneer Park, LLC v. City of Mercer Island*, 106 Wn. App. 461, 473, 24 P.3d 1079 (2001). And under the "clearly erroneous application" test, we apply the law to the facts and will overturn the land use decision only if we have a "definite and firm conviction" that the decision maker committed a mistake. *Citizens to Pres. Pioneer Park*, 106 Wn. App. at 473.

 ¶9 Chinn argues that the Council erred in rezoning the Property from Office to Office Retail because the Property is not within the area designated for higher intensity use in the downtown plan. West counters that because the Property was already zoned for office use, the Council had authority under both the comprehensive plan and the SMC to rezone the Property from Office to Office Retail. We hold that although Office Retail may exist outside the areas designated for higher intensity use, the Council misinterpreted the law in concluding that a rezone under the SMC zoning code from Office to Office Retail does not change the underlying use. We further hold that the Council's decision was a clearly erroneous application of law to the facts because, while the SMC allows Office Retail only in higher intensity areas, the facts demonstrate that the Property is not located in a higher intensity area.

¶10 The SMC requires the Council to consider five factors when reviewing an application to rezone. SMC

---

(b) The land use decision is an erroneous interpretation of the law, after allowing for such deference as is due the construction of a law by a local jurisdiction with expertise;

. . . .

(d) The land use decision is a clearly erroneous application of the law to the facts.

17G.060.120; SMC 17G.060.170(C).[4] The rezone must meet all five factors. SMC 17G.060.170(B). At issue in this case are the three of those factors: (1) whether the rezone is allowed under the SMC, (2) whether the rezone is consistent with the comprehensive plan, and (3) whether the proposal will have a significant adverse impact on the environment or the surrounding properties. SMC 17G.060-.170(C)(1), (2), (5).

¶11 Under the comprehensive plan's land use (LU) 1.5 policy, the main objective is to "[d]irect new office uses to centers and corridors designated on the land use plan map." CP at 96 (containing a copy of the relevant portion of Spokane's comprehensive plan). Not all office use must exist in a center, however, as the following language explains:

> To ensure that the market for office use is directed to centers, future office use is *generally* limited in other areas. The Office designations located outside centers are confined to the boundaries of existing office designations. *Office use within these boundaries is allowed outside of a center.*

CP at 96 (emphasis added). Thus, even though the overall goal of LU 1.5 is to direct new or "future" office uses to centers, those office uses may exist outside the centers so

---

[4] The Council must consider the five factors when reviewing type II and type III permit applications. SMC 17G.060.170(C). Rezoning is a type III permit. SMC 17G.060.120. All five factors in SMC 17G.060.170(C) are:

1. The proposal is allowed under the provisions of the land use codes.
2. The proposal is consistent with the comprehensive plan designation and goals, objectives, and policies for the property.
3. The proposal meets the concurrency requirements of chapter 17D.010 SMC.
4. If approval of a site plan is required, the property is suitable for the proposed use and site plan considering the physical characteristics of the property, including but not limited to size, shape, location, topography, soils, slope, drainage characteristics, the existence of ground or surface water and the existence of natural, historic or cultural features.
5. The proposal will not have a significant adverse impact on the environment or the surrounding properties, and *if necessary* conditions can be placed on the proposal to avoid significant effects or interference with the use of neighboring property or the surrounding area, considering the design and intensity of the proposed use.

long as the office use is within the boundary of an existing office designation. The Council was correct in making this finding. But the analysis does not end with finding that an office use can exist outside a center, as some office uses are allowed only in certain areas:

> *Uses such as* freestanding sit-down restaurants or retail *are appropriate only in the office designation located in higher intensity office areas* around downtown Spokane in the North Bank and Medical Districts shown in the Downtown Plan.

CP at 96. Accordingly, LU 1.5 not only limits office use outside the center to existing boundaries but also limits the higher intensity uses to certain areas. West maintains that this language is irrelevant because LU 1.5 limits only *"freestanding"* retail—which the Property will not have—to the higher intensity office areas. CP at 96 (emphasis added). But West's argument is flawed because even assuming that *"freestanding"* modifies *"retail,"* the group is not limited to the uses enumerated in LU 1.5. CP at 96. Specifically, LU 1.5 limits the location of uses *"such as* freestanding sit-down restaurants or retail,"* which leaves open the possibility that LU 1.5 limits other office uses. CP at 96. Instead, the apparent goal in LU 1.5 is to match the character of the office use to the character of its surroundings.

¶12 Indeed, the SMC reflects the goal articulated in LU 1.5 of matching the character of office use to the character of the surrounding area. To this end, the SMC first creates the Office and Office Retail zones to distinguish office use according to intensity: Land zoned Office is "intended to be a low intensity office zone," whereas land zoned Office Retail is "intended to be a higher intensity office zone." SMC 17C-.120.030(A), (B).[5] Next, the SMC envisages that development

---

[5] SMC 17C.120.030(A) states in full:

The office zoning category is located in areas designated office on the land use plan map of the comprehensive plan. The office (O) zone is used on small sites in or near residential areas or between residential and commercial areas. It is intended to be a low intensity office zone that allows for small-scale offices in or adjacent to residential neighborhoods. The allowed uses are intended to serve nearby neighborhoods and/or have few detrimental impacts on the neighbor-

in Office and Office Retail zones will match the character of the surrounding area. Development in an Office zone "is intended to be of a scale and character similar to nearby residential development to promote compatibility with the surrounding area." SMC 17C.120.030(A). Similarly, development in an Office Retail zone is limited by the size of retail uses "to reduce detrimental impacts on nearby residential uses and to assure that the commercial uses are supporting rather than primary uses." SMC 17C.120.030(B).

¶13 Particularly for an Office Retail zone, however, the intensity of the surrounding area is crucial. Specifically, the SMC limits Office Retail to "the higher intensity office areas . . . shown in the Downtown Plan" and to the "sites outside of the areas designated for higher intensity office use *that are already developed with higher intensity retail and services uses.*" SMC 17C.120.030(B) (emphasis added). These limitations reflect the policy in LU 1.5 to match the character of the office use to the surrounding area.[6] These limitations also reflect the fifth criteria that SMC 17G.060.170(C)(5) requires a decision maker to consider, namely, whether the proposal will have a significant adverse impact on the environment or surrounding proper-

hood. Development is intended to be of a scale and character similar to nearby residential development to promote compatibility with the surrounding area.

SMC 17C.120.030(B) states in full:

The office retail zoning category is located in areas designated office on the land use plan map of the comprehensive plan that are within the higher intensity office areas around downtown Spokane in the North Bank and Medical Districts shown in the Downtown Plan. The office retail zone is also applied to sites outside of the areas designated for higher intensity office use that are already developed with higher intensity retail and services uses. It is intended to be a higher intensity office zone that allows for larger scale offices and supporting retail and service uses. The size of retail uses is limited to reduce detrimental impacts on nearby residential uses and to assure that the commercial uses are supporting rather than primary uses.

[6] Unlike the comprehensive plan, which limits "[u]ses such as freestanding sit-down restraints or retail [to the] higher intensity office areas . . . shown in the Downtown Plan," CP at 96, the Office Retail zones also include sites outside the areas designated for higher intensity use. SMC 17C.120.030(B). We resolve any conflict between a city's comprehensive plan and specific zoning regulation in favor of the zoning regulation. *Citizens for Mount Vernon v. City of Mount Vernon,* 133 Wn.2d 861, 873, 947 P.2d 1208 (1997).

ties. We hold that Office Retail may exist outside the designated areas, but only if the surrounding area is ripe for the higher intensity use that Office Retail brings.

¶14 In the present case, the Council's decision incorrectly assumed that rezoning from Office to Office Retail was not a change in the underlying use. The Council found that the underlying land use did not change because the property was already zoned for office use and because the application for a rezone included office use. But under SMC 17C.120.030(A)-(B), office uses vary according to intensity, where an Office zone serves lower intensity uses and where an Office Retail zone serves higher intensity uses. Rezoning from Office to Office Retail is thus an upzone that changes the underlying use from lower intensity to higher intensity as a matter of law, and the Council misinterpreted the law in concluding that under the SMC zoning code, rezoning from Office to Office Retail did not change underlying land use.

¶15 The Council's misinterpretation of the law was then applied to facts resulting in a clearly erroneous application of the law to the facts. Contrary to the Council's understanding, the SMC envisions that Office Retail is appropriate in only (1) areas designated for higher intensity office use or (2) areas already developed with higher intensity use.[7] But while the SMC plainly requires Office Retail to be located in higher intensity areas, the facts before the Council were that the area surrounding the Property was low intensity.

¶16 First, the Property was not located in an area designated for high intensity use. This is undisputed. Second, the record indicates that the area surrounding the Property was developed with low intensity office use. In

---

[7] SMC 17C.120.030(B) mandates that, when outside the designated areas, the higher intensity Office Retail is appropriate only in areas already developed with higher intensity uses. Consistent with and complementary to this mandate, the decision maker, in approving projects, must determine whether the proposal will have a significant adverse impact on the surrounding properties. SMC 17G.060.170(C)(5).

particular, the hearing examiner made findings that the north, south, and west of the Property were developed with small scale offices, many of which were former residences. The only building surrounding the Property not zoned for small scale offices was the county courthouse; however, the county courthouse is an anomaly that is not retail, office, or residential, and height alone is not determinative. The hearing examiner also found that an Office Retail rezone would be "much more dense and intense" than the existing Office zone. CABR § 1, at 12.

¶17 In addition, the record supports the hearing examiner's findings. Part of the record contains several letters from concerned citizens. As a common theme throughout the letters, the citizens indicated that the current surrounding neighborhood has smaller buildings that serve light office and residential use. Some of the surrounding buildings are historic. And as one citizen stated, "The extent of the proposed project would disrupt the continuity of the neighborhood well beyond its physical boundaries." CABR § 1, at 163.

¶18 Considering the facts on the record, we have a definite and firm conviction that the Council erroneously applied the law to the facts, instead finding that all office use is the same, which is patently incorrect. We find error and reverse the Council's decision, reinstating the hearing examiner's decision consistent with this opinion.[8]

ARMSTRONG and QUINN-BRINTNALL, JJ., concur.

---

[8] Chinn also argues that the Council erred in concluding that the rezone would not set a precedent. A final decision has precedential value until that decision is overturned. Because the Council erred in granting West the rezone, no precedential value exists, and this argument is moot.