[No. 42029-5-II.   Division Two.   January 23, 2013.]

BRAD CHINN, *Respondent*, v. THE CITY OF SPOKANE, *Defendant*, WEST CENTRAL DEVELOPMENT, LLC, *Appellant*.[†]

---

[†]The caption for this opinion reflects the procedural status of the parties under RAP 3.4 rather than their virtual status as described in note 1, *infra*.

*Stacy A. Bjordahl* (of *Parsons/Burnett/Bjordahl/Hume LLP*), for appellant.

*Lisa J. Dickinson* (of *Dickinson Law Firm PLLC*), for respondent.

¶1 HUNT, J. — Brad Chinn appeals[1] the Spokane City Council's rezone of eight parcels of land owned by West Central Development LLC; this rezone increased the maximum building height from 35 feet, zoned "Office," to 150 feet. Chinn argues that (1) the City Council wrongfully permitted a "high intensity" rezone by erroneously interpreting Spokane Municipal Code (SMC) 17C.120.030's definition of an "Office" zone, intended to be low intensity; and (2) the rezone is inconsistent with Spokane's Comprehensive Plan, specifically Chapter 3, Land Use Policy 3.2, and Section 3.5. According deference to the City Council's inter-

---

[1] Despite the appellate briefs' contrary titles, under our court's General Order 2010-1, Chinn is the virtual "appellant" because he is appealing the City Council's order, and West Central is the virtual "respondent" because the City Council originally ruled in its favor. Nevertheless, to avoid confusion, we cite Chinn's brief as "Br. of Resp't" and West Central's brief as "Br. of Appellant."

pretation of its own code, we hold that in approving the rezone the City Council neither erroneously interpreted SMC 17C.120.030 and the Comprehensive Plan nor erroneously applied them to the facts here. We affirm.

## FACTS

¶2 West Central Development LLC applied to the City of Spokane to rezone eight vacant parcels of land from O-35 to O-150 feet, to allow taller buildings in this existing Office zone.[2] Administrative Record (AR) at 6. Comprising approximately 48,000 square feet, this " 'L' shaped" property covers almost an entire city block. On this property, West Central hopes to construct a 150-foot tower, a parking garage, and approximately 124,000 square feet of office space; it also plans to leave additional open space.

¶3 The property is located in an area zoned O-35 (Office zone, 35-foot height limit); the historic Gables Apartments are located on the same block. The historic Spokane County Courthouse Complex across the street to the east is zoned CB-150 (community business zone, 150-foot height limit). Located to the north, south, and west of the property are small scale offices, many in former residences. There is no residential zone adjacent to or within 1,275 feet of the property, but apparently there are "residential uses" in the surrounding neighborhood, despite the area's O-35 Office zone. AR at 12.

¶4 In 2009, a Spokane Hearing Examiner reviewed West Central's O-150 rezone proposal. Thirty-one members of the

---

[2] West Central originally applied to rezone the property from O-35 to OR-150 (mixed office and retail zone 150-foot height limit) in 2007. On appeal, we held this original rezone proposal improper and reversed the Spokane City Council's approval of the rezone. *Chinn v. City of Spokane*, 157 Wn. App. 294, 303, 236 P.3d 245 (2010). While this earlier appeal was pending, West Central resubmitted a new rezone proposal mirroring the original proposal, but omitting the retail component. City officials estimated that the new proposal would generate an additional 192 morning "peak hour trips," 185 evening "peak hour trips," and 1,365 total "daily trips." Administrative Record at 65. It is this new rezone proposal that is at issue in the instant appeal.

public commented in favor of the project, including two Spokane County Commissioners; ten, including Brad Chinn, opposed or expressed concern. The public testimony related to "shading and the blocking of views from the 150 foot building" and the precedent that this type of rezone would create. AR at 12. The Hearing Examiner determined that the proposal would not have a significant adverse impact on the environment or the surrounding properties, would not impact views of the County Courthouse any more than the existing jail structure does, and could avoid significant negative effects if he imposed appropriate necessary conditions. Concluding that the proposed rezone met all SMC 17G.060.170[3] requirements, the Hearing Examiner approved the rezone proposal, conditioned on (1) West Central's complying with the tall building standards in chapter 17C.250 Spokane Municipal Code, (2) complying with the measures in the amended mitigated determination of nonsignificance, and (3) limiting the height of the new building to the height of the Spokane County Courthouse Complex.[4]

¶5 Chinn appealed the Hearing Examiner's decision to the Spokane City Council, asking it to reverse the Hearing Examiner's decision under SMC 17G.050.350. The City Council determined that Chinn was unable to meet his burden under SMC 17G.050.350 to demonstrate that the Hearing Examiner's decision either (1) was entirely unsupported by the record, or (2) contained an error of law or fact that, if corrected, would change the outcome of the dispute. The City Council affirmed the Hearing Examiner's finding

---

[3] Changes to SMC 17G.060.170 not affecting the resolution of the issues of this case were made after the Spokane Hearing Examiner reviewed West Central's rezone proposal.

[4] More specifically, the Hearing Examiner found that (1) adverse impacts of the proposed rezone would include shading and blocking views; (2) as conditioned, however, the proposal complied with SMC 17C.120.220; (3) therefore, these impacts were not significantly adverse; and (4) other adverse impacts would be mitigated by the conditions that the transportation department placed on the proposal in its "Mitigated Determination of Nonsignificance," which the Hearing Examiner adopted as conditions of the rezone. AR at 12.

that the proposed rezone, as conditioned, met the SMC 17G.060.170 criteria.[5]

¶6 Appealing the City Council's decision to the superior court, Chinn filed a petition under the Land Use Petition Act (LUPA).[6] Chinn argued that (1) the City Council had erroneously applied the Spokane Municipal Code, (2) the City Council decision was not supported by substantial evidence, and (3) the City Council's decision represented a clearly erroneous application of the law to the facts. Ruling that the City Council had erroneously interpreted the law, the superior court concluded that the proposed rezone represented a higher-intensity use and, therefore, was not allowed under SMC 17C.120.030(A). West Central appeals the superior court's decision, which, under our General Order 2010-1, makes Chinn the virtual appellant. As such, the burden falls on him to show that the City Council erred, as was his burden in the superior court sitting in its appellate capacity under LUPA.

## ANALYSIS

¶7 Chinn argues that the City Council failed to comply with SMC 17C.120.030 and with the City's Comprehensive Plan when it granted West Central's request to rezone the maximum height limit from 35 to 150 feet in the Office zone in which the property is located. We disagree.

### I. Standard of Review

¶8 Reviewing petitions under LUPA, we stand in the shoes of the superior court, limiting our review to the record before the City Council. *Chinn v. City of Spokane*, 157 Wn. App. 294, 297, 236 P.3d 245 (2010). The party

---

[5] In affirming the Hearing Examiner's findings and conditions of approval, the City Council added that the project would have to comply with the "tall building standards set forth in SMC 17C.250" and would have to "go through the City's Design Review Committee for comments and recommendations." AR at 247.

[6] Ch. 36.70C RCW; RCW 36.70C.005.

appealing the City Council's land use decision, Chinn, bears the burden of meeting one of six standards authorizing us to grant relief under LUPA. RCW 36.70C.130(1). At issue are three of these six provisions: (1) whether the City Council's decision was "an erroneous interpretation of the law, after allowing for such deference as is due the construction of a law by a local jurisdiction with expertise"; (2) whether the decision was "not supported by evidence that is substantial when viewed in light of the whole record before the court"; and (3) whether the decision was "a clearly erroneous application of the law to the facts." RCW 36.70C.130(1)(b)-(d).

¶9 Under the first standard, we accord deference to the City Council's expertise while reviewing de novo claims that the City Council erred in interpreting its own ordinance. *Chinn*, 157 Wn. App. at 298. Under this second standard, we are deferential to the fact findings of the highest forum below that exercised its fact finding authority, here, the City Hearing Examiner. *Chinn*, 157 Wn. App. at 298. Finally, under the clearly erroneous standard, we apply the law to the facts, overturning the City Council's land use decision if we have "a 'definite and firm conviction' that the decision maker committed a mistake." *Chinn*, 157 Wn. App. at 298 (quoting *Citizens to Pres. Pioneer Park, LLC v. City of Mercer Island*, 106 Wn. App. 461, 473, 24 P.3d 1079 (2001)).

¶10 To determine whether the City Council misinterpreted its code provisions, we follow general principles of statutory construction. *City of Gig Harbor v. N. Pac. Design, Inc.*, 149 Wn. App. 159, 167, 201 P.3d 1096, *review denied*, 166 Wn.2d 1037 (2009). We look first to the plain language of the provisions at issue; and we strive to read them harmoniously to give effect to all, avoiding an incongruous reading potentially nullifying other provisions. *See N. Pac. Design*, 149 Wn. App. at 167, 170. Where one provision treats a subject in general terms and another treats the same subject in a more detailed way, the specific prevails over the general absent a contrary legislative intent. *See*

*Wells Fargo Bank, NA v. Dep't of Revenue*, 166 Wn. App. 342, 358-59, 271 P.3d 268, *review denied*, 175 Wn.2d 1009 (2012).

## II. REZONE

¶11 The SMC requires a proposed type III rezone to meet five criteria for City Council approval. SMC 17G-.060.170(C). Three of these five criteria are in dispute here: whether the proposal is allowed under the land use codes, is consistent with the comprehensive plan, and will not have a significant adverse impact on the environment or the surrounding properties. In assessing this latter criterion, the City Council considers whether, in light of the design and intensity of the proposed use, conditions are necessary to avoid significant interference with the use of neighboring property or surrounding area.[7] SMC 17G.060-.170(C)(1)-(2), (5).

### A. Findings of Fact and Interpretation of SMC 17C.120.030

¶12 Chinn asserts that the City Council erroneously interpreted SMC 17C.120.030(A) and, therefore, improperly approved the rezone proposal, contrary to SMC 17G.060-.170(B) and other applicable land use codes. He argues that SMC 17C.120.030(A)'s definition of "Office" use or zone requires development to be of " 'low intensity' " and " 'of a scale and character similar to nearby residential development' "[8] so that it promotes compatibility with the sur-

---

[7] We do not address whether the rezone would have a significant adverse impact on the environment or the surrounding properties because (1) Chinn does not explain such impact in his appellate brief; and (2) we do not "review issues for which inadequate argument has been briefed or only passing treatment has been made." *State v. Thomas*, 150 Wn.2d 821, 868-69, 83 P.3d 970 (2004). Nevertheless, we note that the Hearing Examiner and the City Council imposed and approved conditions to mitigate the proposal's potential adverse impacts.

[8] Br. of Resp't at 8, 9 (quoting SMC 17C.120.030(A)).

rounding area.[9] West Central counters that (1) the City Council correctly interpreted and applied SMC 17C.120-.220(B),[10] which specifies height limits and exceptions for all zones, because it regulates building height rezone increases; and (2) the SMC 17C.120.030(A)'s precatory general scale and intensity goals did not apply. West Central is correct.

## 1. Use and building height

¶13  At the outset, we note that (1) West Central's rezone request was not to change the property's zoned use to something other than the existing Office use, but rather to change the maximum building height limit; (2) SMC 17C.120.030(A) does not specify heights limits, but rather explains aspirational reasons for imposing scale and intensity of use regulations in general;[11] and (3) SMC 17C.120.220(B) allows a default Office zone building height

---

[9] Chinn does not dispute that West Central's proposed rezone complies with SMC 17C.120.220(B). Instead, he uses that code provision to support his interpretation of SMC 17C.120.030(A). Therefore, we need not address whether West Central's rezone proposal complied with SMC 17C.120.220(B).

[10] Changes to SMC 17C.120.220 not affecting the resolution of the issues of this case were made after the Spokane Hearing Examiner reviewed West Central's rezone proposal.

[11] SMC 17C.120.220(A), "height limits," is similarly aspirational in tone and lacking in specific height limits:

A. Purpose

The height limits are *intended* to control the overall scale of buildings. The height limits in the [office], [neighborhood retail,] and [neighborhood mixed use] zones *discourage* buildings that visually dominate adjacent residential areas. The height limits in the [office retail], [community business,] and [general commercial] zones allow for a greater building height at a scale that generally reflects Spokane's commercial areas. Light, air and the potential for privacy are *intended* to be preserved in single-family residential zones that are close to commercial zones.

AR at 202 (emphasis added).

98

limit of 35 feet, absent a rezone exception allowing an increased height.[12]

¶14 SMC 17C.120.030(A), "Office," provides:

The office zoning category is located in areas designated office on the land use plan map of the comprehensive plan. The office (O) zone is used on small sites in or near residential areas or between residential and commercial areas. *It is intended* to be a *low intensity office zone* that allows for small-scale offices in or adjacent to residential neighborhoods. The allowed uses are intended to serve nearby neighborhoods and/or have few detrimental impacts on the neighborhood. *Development is intended to be of a scale and character similar to nearby residential development* to promote compatibility with the surrounding area.

Clerk's Papers (CP) at 143 (emphasis added). By its plain language, this provision is precatory, not mandatory: It employs the term "is intended" to describe aspirational characteristics of a low intensity Office zone, small-scale offices near residential neighborhoods, and development similar in scale and character to nearby residential development with few detrimental impacts on neighborhoods.[13]

¶15 Furthermore, the precatory language of SMC 17C-.120.030 reads harmoniously with both SMC 17C-.120.220(A) (similarly employing precatory language and espousing goals in general terms) and SMC 17C.120-.220(B)(1),[14] which expressly limits building height in an Office zone to 35 feet and requires a rezone to change

---

[12] SMC 17C.120.220(B) addresses exceptions to zoning height limitations, after first recognizing the default height limits listed in table 17C.120-2. Table 17C.120-2 lists 35 feet as the default maximum height for the Office zone. *Spokane Municipal Code*, available at http://www.spokanecity.org/services/documents/smc/?Section=17C.120.210 (last visited Dec. 4, 2012); *see also* SMC 17C.120.030(B).

[13] Chinn, however, argues that this provision *requires* compatibility with nearby residential "zones" rather than with residential "areas" in general, and that West Central's proposed rezone was not of the scale and character of nearby residential development. Br. of Resp't at 9.

[14] SMC 17C.120.220(B) provides the following height restrictions for the Office zone:

it, listing exceptions in varying increments up to 150 feet. In determining the proposed rezone's compliance with existing land use codes, including height limits, both the Hearing Examiner and the City Council relied primarily on SMC 17C.120.220(B). The City Council affirmed the Hearing Examiner, stating that (1) SMC 17C.120.220 would prohibit the proposed rezone only if it were located within 150 feet of a single- or two-family residential zone; and (2) the zones surrounding West Central's property's Office zone are not single- or two-family residential zones, but instead "Office and Central Business District zones." AR at 246.

¶16 We accord deference to the City Council's expertise in interpreting its own ordinances, which our independent review shows to have been reasonable. *See Chinn*, 157 Wn. App. at 298. We are also deferential to the highest forum below that exercised its fact finding authority, the Hearing

---

B. Height Standards
The height standards for all structures are stated in Table 17C.120-2. *Exceptions to the maximum height standard are stated below.*

1. Maximum Height.
Exceptions to the maximum structure height are designated on the official zoning map by a dash and a height listed after the zone map symbol (i.e., CB-150). *Changes to the height limits require a rezone.* Height limits are thirty-five feet, forty feet, fifty-five feet, seventy feet or one hundred fifty feet depending on location.
2. Buildings and structures over fifty feet in height must follow the design, setback and dimensional standards found in chapter 17C.250 SMC, Tall Building Standards.
3. Adjacent to Single-family and Two-family Residential Zones.
To provide a gradual transition and enhance the compatibility between the more intensive commercial zones and adjacent single-family and two-family residential zones:

a. *For all development within one hundred fifty feet of any single-family or two-family residential zone the maximum building height is as follows*:

i. *Starting at a height of thirty feet* at the residential zone boundary additional building height may be added at a ratio of 1 to 2 (one foot of additional building height for every two feet of additional horizontal distance from the closest single-family or two-family residential zone). The building height transition requirement ends one hundred fifty feet from the single-family or two-family residential zone and then full building height allowed in the zone applies.

AR at 202-03 (emphasis added).

Examiner. *See Chinn*, 157 Wn. App. at 298. The Hearing Examiner found, and the City Council affirmed, that the proposed rezone complies with SMC 17C.120.220(B). And Chinn does not argue that the proposed rezone does not satisfy SMC 17C.120.220(B). On the contrary, a rezone to increase the height limit for this Office zone is allowed as an exception under SMC 17C.120.220(B); this rezone also complied with SMC 17G.060.170(C). We cannot conclude, therefore, that the City Council made a mistake here. *See Chinn*, 157 Wn. App. at 298. We hold that the City Council did not err in allowing the rezone under SMC 17C.120.220(B).[15]

### 2. Low intensity

¶17 Chinn also contends that the City Council either ignored or "made a non-sensical factual analysis when determining that a 150 foot [office] building would still be 'low intensity' " under SMC 17C.120.030(A). Br. of Resp't at 11. West Central counters that (1) the Office zone is by definition low intensity; (2) building height is not related to intensity; (3) Chinn fails to recognize that, without seeking a rezone to O-150, West Central could achieve the same building volume in the existing O-35 zone simply by erecting a 35-foot high building with a larger footprint; (4) we accord deference to the City Council's decision; and (5) not all office zoning *must* remain "low intensity." Br. of Appellant at 22.

---

[15] Chinn also asserts that the City Council's decision is not supported by substantial evidence and that its decision represents a clearly erroneous application of the law to the facts. These arguments, however, depend on SMC 17C.120.030(A)'s governing the rezone rather than SMC 17C.120.220(B)'s governing, as the City Council ruled. Because SMC 17C.120.220 governs, Chinn's challenges fail.

Similarly, Chinn does not argue the City Council erroneously found that the proposed rezone would satisfy the height exception requirements of SMC 17C.120.220(B). An independent review reveals the City Council followed its own ordinance because none of the adjacent zones are residential and the nearest single-family or two-family residential zone is approximately 1,275 feet away, well over the 150 feet required to avoid triggering the additional requirements of SMC 17C.120.220(B)(3)(a).

¶18 Again, we accord deference to the City Council's interpretation of its own code. SMC 17C.120.220(B) expressly permits exceptions to the default building height standards in table 17C.120-2. Therefore, we hold that (1) the Hearing Examiner and the City Council correctly interpreted the city code to approve the proposed rezone from O-35 to O-150 under the height exceptions allowed in SMC 17C.120.220(B); (2) any arguably incongruent or precatory language in SMC 17C.120.030(A) does not supersede the specific building height exceptions for the Office zone allowed in SMC 17C.120.220(B); and (3) the conditions the City placed on West Central's proposal advance the precatory goals of SMC 17C.120.030(A) and SMC 17C.120.220(A).

## B. Consistency with Comprehensive Plan

¶19 Finally, Chinn argues that the City Council's rezone approval was inconsistent with the Comprehensive Plan, specifically Land Use Policy 3.2 and Section 3.5. We agree with Chinn that SMC 17G.060.170(C) requires proposed rezones to be consistent with the comprehensive plan. But we disagree with Chinn that the rezone approval at issue here was inconsistent.

¶20 Chinn's argument relies on the following part of Land Use Policy 3.2 of the Comprehensive Plan:

> To promote social interaction and provide a focal point for the center, a central gathering place, such as a civic green, square, or park, should be provided. To identify the center as the major activity area of the neighborhood, it is important to encourage buildings in the core area of the neighborhood center to be taller. Buildings up to three stories are encouraged in this area. . . . As a general rule, the amount of commercial space and percent devoted to office and retail should be proportional to the number of housing units in the neighborhood. The size of individual commercial business buildings should be limited to assure that the business is truly neighborhood serving.

CP at 76. Chinn also relies on the following part of Section 3.5 (Description of Land Use Designations) of the Comprehensive Plan to contend that an O-150 rezone is not permitted here:

**Office:** The Office designation is usually freestanding small office sites and larger sites with two or more buildings located along arterial streets or intersections or as a buffer adjacent to residential areas. Higher intensity office areas should be located around downtown Spokane in the North Bank and Medical District shown in the Downtown Plan.

CP at 93.

¶21 The City Council and Hearing Examiner determined that the proposed rezone was consistent with Chapter 3 of the Comprehensive Plan. Specifically, the City Council reasoned that, although the Comprehensive Plan *suggests* that higher intensity office uses should be located around downtown Spokane and the Medical District, the zoning code permits office use in general in an Office zone, and the Office zone does not restrict or define "higher intensity" offices. AR at 246.

¶22 Again, the Comprehensive Plan employs precatory language. None of the provisions that Chinn cites prohibit Office zone building heights above 35 feet. Instead, the quoted language merely "encourage[s]" buildings up to three stories, and it *suggests* that higher intensity office areas "should be located around downtown Spokane in the North Bank and Medical District." CP at 76, 93. Thus, neither the rezone nor the applicable provisions of the SMC are in conflict with the Comprehensive Plan's aspirational goals.[16]

---

[16] But even if the Comprehensive Plan provisions were mandatory, such that they conflicted with City zoning regulations, we resolve conflicts between a city's comprehensive plan and its specific zoning regulations in favor of the zoning regulations. *Chinn*, 157 Wn. App. at 301 n.6.

¶23 Finding nothing clearly erroneous in the City Council's approval of West Central's requested rezone to O-150, we affirm.[17]

WORSWICK, C.J., and VAN DEREN, J., concur.

---

[17] Our affirming the City Council means that we reverse the superior court's reversal of the City Council's decision.