**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION II**

| | |
|---|---|
| WELLS FARGO BANK, N.A., AS TRUSTEE FOR OPTION ONE MORTGAGE LOAN TRUST 2006-1, ASSET-BACKED CERTIFICATES, SERIES 2006-1, its successors in interest and/or assigns, | No. 50242-9-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| BARRY M. GARDNER, A/K/A BARRY M. GARDNER SR.; MARY BETH GARDNER, | |
| Appellants, | |
| LAKE LIMERICK COUNTY CLUB; UNITED STATES OF AMERICA; ALL OCCUPANTS OF THE PREMISES; and any persons or parties claiming to have a right, title, estate, lien or interest in the real property described in the complaint, | |
| Defendants. | |

BJORGEN, J. — Barry and Mary Beth Gardner appeal from a grant of partial summary

judgment in favor of Wells Fargo Bank, N.A. (Wells Fargo) in a judicial foreclosure proceeding.

The Gardners argue that the superior court erred by striking and dismissing their

affirmative defense predicated on the failure to mediate in good faith and by dismissing their

counterclaim under the Consumer Protection Act (CPA), chapter 19.86 RCW. Wells Fargo

argues that the Gardners failed to timely appeal the striking of their affirmative defense and the

superior court's order granting partial summary judgment. Both parties request attorney fees and costs on appeal.

We hold that the Gardners' appeal is timely, but the superior court did not err in granting partial summary judgment and striking their affirmative defense. We also award reasonable attorney fees and costs to Wells Fargo on appeal.

Accordingly, we affirm.

FACTS

On October 4, 2005, the Gardners executed a promissory note in the amount of $900,000 payable to Option One Mortgage Corporation (Option One) for a loan of the same amount. The note was subsequently made payable to Wells Fargo as trustee. Wells Fargo held the note.

To secure payment of the note, the Gardners executed and delivered to Option One a deed of trust on their Port Orchard home. In February 2009, the Gardners ceased making payments on their loan, which had an unpaid balance as of August 29, 2014 of $895,500. On July 17, Option One's successor-in-interest, American Home Mortgage Servicing Inc. (AHMSI), assigned the deed of trust to Wells Fargo.[1] AHMSI continued to act as the loan servicer. On November 17, the Gardners filed for bankruptcy.

On January 25, 2010, Steve McLean contacted the Gardners regarding the possibility of acquiring a reverse mortgage on their home.[2] The Gardners hoped to use the funds from the

---

[1] AHMSI changed its name to Homeward Residential Inc. in May 2012. In the interest of simplicity, this opinion uses AHMSI to refer to AHMSI, Homeward Residential, and any other name AHMSI was doing business under.

[2] A "reverse mortgage" refers to a mortgage where the lender makes payments to the homeowner, which enables the homeowner to convert equity in a home into available funds. *Brown ex rel. Richards v. Brown*, 157 Wn. App. 803, 808 n.4, 239 P.3d 602 (2010). The record also refers to a reverse mortgage as a "home equity conversion mortgage."

reverse mortgage to reach a settlement with Wells Fargo that would extinguish the existing lien on their home created by the 2005 mortgage and deed of trust. The Gardners anticipated that a successful settlement with Wells Fargo would allow them to retain their home for the remainder of their lives. McLean clarified that in order for the Gardners to qualify for a reverse mortgage, "[t]he reverse mortgage must be in a 1st lien position." Clerk's Papers (CP) at 529.

On February 24, the Gardners received a bankruptcy discharge. The discharge explained that while a creditor could not attempt to collect a debt that was discharged, it retained "the right to enforce a valid lien, such as a mortgage or security interest, against the debtor's property after the bankruptcy." CP at 358.

On September 12, 2011, the Gardners entered into foreclosure mediation with Wells Fargo. The first mediation on October 25 did not result in an agreement. On April 19, 2012, the Gardners sent AHMSI a settlement e-mail stating that they believed they could be approved for a reverse mortgage of $407,727 and that after subtracting $30,000 for legal fees and repairs they could offer $377,727 in exchange for extinguishing Wells Fargo's lien. On April 20, AHMSI responded that the Gardners' property had been appraised at $470,000 and that Wells Fargo wanted $423,000 in lieu of foreclosure. AHMSI also stated that it might be able to convince Wells Fargo to accept an offer of $413,600, but that it was unwilling to absorb the cost of repairs and legal fees.

On May 31, 2012, the Gardners sent another settlement letter to AHMSI stating that they had obtained a second appraisal of the property for $418,000, with an average valuation of $444,000 between the two appraisals. Based on the average between the two appraisals, the Gardners offered $375,000. The Gardners also informed AHMSI that the reverse mortgage

3

lender "will require that the home repairs take place in connection with the reverse mortgage," and that they estimated the repairs to be at least $10,000 and as high as $20,000.

On September 20, AHMSI and the Gardners attended a second mediation. At the mediation, AHMSI maintained that the Gardners' financial information was stale and required updated documentation before it would agree to a settlement. AHMSI and the Gardners did not reach an agreement, and the mediator found that AHMSI had failed to negotiate in good faith due to "[l]ack of timely provision of documents." CP at 297. On October 18, McLean sent a letter to the Gardners stating that their "application for the [r]everse [m]ortgage cannot move forward until there is an acceptable settlement with [Wells Fargo]," because "the balance owed against the home is in excess of the funds available . . . with a reverse mortgage." CP at 542.

On November 13, the Gardners sent another settlement e-mail to AHMSI stating that they could obtain a reverse mortgage for $425,965.50, and offering to settle for $379,321.00. The settlement offer provided that $30,000 of the total reverse mortgage would be used to make repairs. On November 16, AHMSI rejected the Gardners' offer as too low in light of its anticipated $432,147.55 gain from a foreclosure sale.

On March 1, 2013, AHMSI transferred the servicing of the Gardners' mortgage to Ocwen Loan Servicing LLC (Ocwen). On April 10, Ocwen sent a notice of default to the Gardners. On October 23, the Gardners sent a settlement letter to Ocwen offering to settle for $300,000.

On September 4, 2014, Wells Fargo filed a complaint for judicial foreclosure of the Gardners' home. On March 13, 2015, the Gardners filed an amended answer and counterclaim, arguing that AHMSI's and, consequently Wells Fargo's, failure to mediate in good faith at the September 20, 2012 mediation was an affirmative defense to judicial foreclosure and a violation of the CPA. On June 4, Wells Fargo filed a motion to dismiss the Gardners' affirmative defense

and counterclaim under CR 12(b)(6).  On July 17, the superior court orally struck the Gardners' affirmative defense but not their counterclaim.[3]

On February 10, 2017, Wells Fargo filed a motion for summary judgment regarding the judicial foreclosure and the CPA counterclaim.  On March 10, the superior court granted summary judgment in favor of Wells Fargo on its judicial foreclosure claim and took the motion on the counterclaim under advisement.  On March 23, the superior court granted summary judgment to Wells Fargo on the Gardners' CPA counterclaim.

On April 21, the Gardners filed a notice of appeal with our court, appealing the superior court's striking of their affirmative defense, the March 10 judgment and decree on foreclosure, and the March 23 order dismissing their CPA counterclaim.

ANALYSIS

I. SUMMARY JUDGMENT

A.     Standard of Review

We review a grant of summary judgment de novo, considering all the evidence and reasonable inferences from the evidence in the light most favorable to the nonmoving party. *Keck v. Collins*, 184 Wn.2d 358, 370, 357 P.3d 1080 (2015).  Summary judgment is only appropriate if no genuine issue of fact exists as to any material fact and the moving party is entitled to judgment as a matter of law.  *Id*.  A material fact is a fact that affects the outcome of the litigation.  *Id*. at n.2.  However, a party cannot defeat a motion for summary judgment merely

---

[3] This ruling was subsequently incorporated into the superior court's March 10, 2017 order on summary judgment.  Additionally, although Wells Fargo submitted a CR 12(b)(6) motion, the superior court orally determined that the Gardners' affirmative defense would be stricken under CR 12(f).

with conclusory statements of fact. *Baldwin v. Silver*, 165 Wn. App. 463, 471, 269 P.3d 284 (2011).

We review a decision granting a motion to strike under CR 12(f) for an abuse of discretion. *King County Fire Prot. Dists. No. 16, No. 36 and No. 40 v. Hous. Auth. of King County*, 123 Wn.2d 819, 826, 872 P.2d 516 (1994). A trial court abuses its discretion if its decision is manifestly unreasonable or is exercised on untenable grounds or for untenable reasons. *State v. Rohrich*, 149 Wn.2d 647, 654, 71 P.3d 638 (2003). A decision is based on untenable grounds or made for untenable reasons if it rests on facts unsupported by the record or was reached by applying the wrong legal standard. *Id*. A decision is manifestly unreasonable if the court, despite applying the correct legal standard to the supported facts, reaches an outcome that is outside the range of acceptable choices, such that no reasonable person could arrive at that outcome. *Id*.

B.      Timeliness of Appeal

As a threshold matter, Wells Fargo contends that the Gardners' appeal of the striking of their affirmative defense and the March 10, 2017 grant of partial summary judgment are not timely under RAP 5.2(a). We disagree.

Under RAP 5.2(a), a party must generally file a notice of appeal in the trial court "30 days after the entry of the decision of the trial court that the party filing the notice wants reviewed." RAP 2.2(d) states in part:

> In any case with multiple . . . claims for relief . . . an appeal may be taken from a final judgment that does not dispose of all the claims or counts as to all the parties, but only after an express direction by the trial court for entry of judgment and an express determination in the judgment, supported by written findings, that there is no just reason for delay. . . . In the absence of the required findings, determination and direction, a judgment that adjudicates less than all the claims or counts, or adjudicates the rights and liabilities of less than all the parties, is subject only to

6

discretionary review until the entry of a final judgment adjudicating all the claims, counts, rights, and liabilities of all the parties.

Neither the striking of the Gardners' affirmative defense nor the March 10 judgment purported to resolve all of the claims between Wells Fargo and the Gardners. Therefore, both of those rulings were subject only to discretionary review until the entry of the March 23 order and judgment resolving the remaining CPA claim. The Gardners filed their notice of appeal on April 21, within 30 days of March 23. Consequently, the Gardners' appeal is timely.

At oral argument, Wells Fargo suggested that the Gardners could not appeal the March 10 grant of partial summary judgment because they had stipulated to that ruling. Wash. Court of Appeals oral argument, *Gardners v. Wells Fargo*, No. 50242-9-II, Apr. 13, 2018, at 20 min., 30 sec. (on file with the court). We generally do not consider arguments that are raised for the first time during oral argument. *State v. Boss*, 144 Wn. App. 878, 887, 184 P.3d 1264 (2008). Therefore, in the interest of fairness to the opposing party, we decline to consider this argument.

C.     Affirmative Defense

The Gardners maintain that the superior court abused its discretion by striking their affirmative defense. We disagree.

The resolution of this issue depends on the interpretation of former RCW 61.24.163(14) (2014), relating to the failure to mediate in good faith. We review issues of statutory interpretation de novo. *Wells Fargo Bank, N.A. v. Dep't of Revenue*, 166 Wn. App. 342, 350, 271 P.3d 268 (2012). Our fundamental objective in statutory interpretation is to give effect to the legislature's intent. *Wells Fargo*, 166 Wn. App. at 350. If a statute's meaning is plain on its face, then we must give effect to that plain meaning as an expression of legislative intent. *Dep't of Ecology v. Campbell & Gwinn, L.L.C.*, 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002). Plain meaning is derived from what the legislature has said in its enactments; that is from all that the legislature

7

has said in the statute and related statutes, which disclose legislative intent about the provision in question. *Campbell & Gwinn, L.L.C.*, 146 Wn.2d at 11.

Although we consider statutes in the context of related statutes, we do not add words to statutes that the legislature has not included. *Lake v. Woodcreek Homeowners Ass'n*, 169 Wn.2d 516, 526, 243 P.3d 1283 (2010). Nor do we interpret a statute in a way that renders any portion meaningless or superfluous. *Jongeward v. BNSF R. Co.*, 174 Wn.2d 586, 601, 278 P.3d 157 (2012). If a statute is susceptible to more than one reasonable interpretation after this inquiry, then the statute is ambiguous and we may resort to additional canons of statutory construction or legislative history. *Wells Fargo*, 166 Wn. App. at 350-51.

We use traditional rules of grammar in discerning the plain language of a statute. *State v. Bunker*, 169 Wn.2d 571, 578, 238 P.3d 487 (2010). As explained by our Supreme Court, one rule of grammar applied to statutory interpretation is "the last antecedent rule, which states that qualifying or modifying words and phrases refer to the last antecedent." *Id*. at 578. Our Supreme Court has also acknowledged the corollary principle to the last antecedent rule, that "'the presence of a comma before the qualifying phrase is evidence the qualifier is intended to apply to all antecedents instead of only the immediately preceding one.'" *Id*. (quoting *City of Spokane v. County of Spokane*, 158 Wn.2d 661, 673, 146 P.3d 893 (2006)).

Turning now to the statute, the Gardners argue that they were entitled to raise an affirmative defense under former RCW 61.24.163(14) because the mediator found that AHMSI failed to mediate in good faith. Former RCW 61.24.163(14) states in part:

> (a) The mediator's certification that the beneficiary failed to act in good faith in mediation constitutes a defense to the nonjudicial foreclosure action that was the basis for initiating the mediation. . . .

> (b) The mediator's certification that the beneficiary failed to act in good faith during mediation does not constitute a defense to a judicial foreclosure or a future

nonjudicial foreclosure action if a modification of the loan is agreed upon and the borrower subsequently defaults.

The Gardners contend that former RCW 61.24.163(14)(b) should be interpreted so that the clause "if a modification of the loan is agreed upon and the borrower subsequently defaults," applies to both judicial foreclosures and future nonjudicial foreclosures. Br. of Appellant at 22. Under the Gardners' proposed interpretation, they may raise AHMSI's failure to mediate in good faith in a judicial foreclosure proceeding because there was never a loan modification and subsequent default.

The rules above signal that the plain meaning of former RCW 61.24.163(14)(a)-(b) does not provide an affirmative defense to a judicial foreclosure action for two reasons. First, the absence of any reference to "judicial foreclosure" in subsection (a) suggests that the legislature did not intend to provide an affirmative defense to judicial foreclosure. If the legislature had intended to extend the affirmative defense to both judicial and nonjudicial foreclosures, it could have clearly expressed that intent by including both terms in subsection (a). Second, the last antecedent rule is not merely a formalistic maxim based on punctuation, but is a sign of legislative intent. Under that rule, the qualifying phrase "if a modification of the loan is agreed upon and the borrower subsequently defaults," applies only to "a future nonjudicial foreclosure action," because that is the immediately preceding antecedent and there is no comma before the qualifying phrase. Former RCW 61.24.163(14)(b). The application of these rules therefore shows that the Gardners' proposed statutory interpretation fails based on the plain meaning of the statute.

The Gardners also argue that Wells Fargo's position would allow a lender to mediate in bad faith in a nonjudicial foreclosure and then escape the consequence of an affirmative defense by switching to a judicial foreclosure. The Gardners argue that this would provide no incentive

to banks to engage in good faith mediation, would frustrate mediation in nonjudicial foreclosures, and would frustrate the Deeds of Trust Act, chapter 61.24 RCW, by encouraging judicial foreclosures. Wells Fargo does not respond to this argument.

The Gardners make sound points. Former RCW 61.24.163(7)(b)(iii) imposes a duty to mediate in good faith on parties engaged in mediation under former RCW 61.24.163. Former RCW 61.24.163(5) requires the beneficiary to transmit documents required for mediation to the mediator and the borrower. The mediator certified that the beneficiary (lender) failed to negotiate in good faith by not timely providing documents. Wells Fargo subsequently pursued a judicial foreclosure. Allowing a lender to escape the principal consequences of bad faith conduct in mediation in this way could well erode both the integrity and efficacy of mediation.

In determining plain meaning, we consider all that the legislature has said in the statute and related statutes, which disclose legislative intent about the provision in question. *Campbell & Gwinn, L.L.C*., 146 Wn.2d at 11. As noted, the statute plainly requires good faith in mediation under former RCW 61.24.163, relating to deeds of trust. The statute also expressly sets out the consequences of bad faith in mediation in nonjudicial and judicial foreclosures in former RCW 61.24.163(14). As we conclude, the plain meaning of former RCW 61.24.163(14) is to deny the affirmative defense in judicial foreclosures, but to allow it in nonjudicial ones, subject to exceptions.

Extending the affirmative defense to judicial foreclosures that began as nonjudicial foreclosures under chapter 61.24 RCW would nurture good faith in mediation in the latter. That, in turn, would serve the express legislative requirement of good faith in former RCW 61.24.163(7)(b)(iii). However, that step would require us to deviate from what we hold is the plain meaning of former RCW 61.24.163(14). Although *Campbell & Gwinn, L.L.C.*, 146 Wn.

2d at 11, allows the consideration of legislative intent in determining plain meaning, it does not allow us to add to or subtract from otherwise plain language because we think it would better serve legislative intent. That step is for the legislature.

For these reasons, the superior court did not abuse its discretion in striking the Gardners' affirmative defense.

D.      CPA Counterclaim

The Gardners argue that the superior court erred by dismissing their CPA counterclaim. They contend that AHMSI's and Wells Fargo's failure to mediate in good faith violated the CPA. We hold the superior court did not err.

Our Supreme Court has held that a party asserting a CPA claim must establish five elements: (1) an unfair or deceptive act or practice, (2) in trade or commerce, (3) that affects the public interest, (4) injury to the party's business or property, and (5) causation. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 784-85, 719 P.2d 531 (1986). Our Supreme Court has explained that the first two elements may be established by showing that the alleged act was a per se unfair trade practice, which exists when a statutory violation has been declared by the legislature to constitute an unfair or deceptive act in trade or commerce. *Id.* at 786-87.

1. Unfair and Deceptive Practice in Trade or Commerce

RCW 61.24.135(2) states in part:

> It is an unfair or deceptive act in trade or commerce and an unfair method of competition in violation of the consumer protection act, chapter 19.86 RCW, for any person or entity to: (a) Violate the duty of good faith under [former] RCW 61.24.163.

The mediator found that AHMSI failed to mediate in good faith at the September 2012 mediation. Thus, the Gardners have satisfied the first two elements of their CPA counterclaim.

2. The Public Interest Element

Wells Fargo argues that the Gardners have failed to establish that its failure to negotiate in good faith affects the public interest. We disagree.

Our Supreme Court has determined that the third element, the public interest element, may be satisfied per se if a party shows "that a statute has been violated which contains a specific legislative declaration of public interest impact." *Hangman Ridge*, 105 Wn.2d at 791. In addition, under the CPA a party may establish that an act or practice is injurious to the public interest if the act or practice "[v]iolates a statute that incorporates [the CPA]" or if it "(a) [i]njured other persons; (b) had the capacity to injure other persons; or (c) has the capacity to injure other persons." RCW 19.86.093(1), (3). In construing the CPA, we are mindful of the legislature's requirement that "[the CPA] shall be liberally construed that its beneficial purposes may be served." RCW 19.86.920.

The statute does not define the term "incorporates." The dictionary defines "incorporate" as "to unite with or introduce into something already existent usu[ally] so as to form an indistinguishable whole that cannot be restored to the previously separate elements without damage," or "to combine (ingredients) into one consistent whole: unite intimately." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1145 (2002). As already noted, RCW 61.24.135(2) states that a violation of the duty of good faith under former RCW 61.24.163 is "an unfair or deceptive act in trade or commerce and an unfair method of competition in violation of the consumer protection act." Under the statute's plain meaning, this incorporates the CPA into former RCW 61.24.163, as well as into the other elements of chapter 61.24 RCW mentioned in RCW 61.24.135. Thus, under RCW 19.86.093(1) the Gardners' CPA claim affects the public interest.

12

In addition, the failure to negotiate in good faith plainly has the capacity to injure other persons. For this reason, the Gardners' CPA claim also affects the public interest under RCW 19.86.093(3).

Wells Fargo's more restrictive interpretation of the statutes ignores both plain statutory language as well as the legislative injunction that the CPA be "liberally construed that its beneficial purposes may be served." RCW 19.86.920. The Gardners have shown that AHMSI's failure to negotiate in good faith affects the public interest, thus satisfying the third element of a CPA claim.

### 3. Injury To Business Or Property

The fourth element of a CPA claim is injury to the plaintiff in his or her business or property. *Hangman Ridge*, 105 Wn.2d at 784-85. Our Supreme Court has held that a plaintiff may demonstrate an injury by showing that her "'property interest or money is diminished because of the unlawful conduct even if the expenses caused by the statutory violation are minimal.'" *Panag v. Farmers Ins. Co. of Wash.*, 166 Wn.2d 27, 57, 204 P.3d 885 (2009) (quoting *Mason v. Mortgage Am., Inc.*, 114 Wn.2d 842, 854, 792 P.2d 142 (1990)). Our Supreme Court has further explained that "[p]ersonal injuries, as opposed to injuries to 'business or property,' are not compensable [under the CPA] and do not satisfy the injury requirement," and "damages for mental distress, embarrassment, and inconvenience are not recoverable under the CPA." *Id*. at 57. The court has also made clear, though, that injury without monetary damages is sufficient to meet the fourth element of a CPA claim. *Mason*, 114 Wn.2d at 854-55.

The Gardners maintain that the loss of the opportunity to mediate in good faith is a recoverable injury under the CPA. The Gardners conceded at oral argument that they had not alleged another form of injury. Wash. Court of Appeals oral argument, *Gardner v. Wells Fargo*,

No. 50242-9-II, Apr. 13, 2018, at 9 min., 10 sec. (on file with the court). Both of the Gardners stated in their depositions that they were not seeking any monetary damages.

The loss of title to real property is an injury to property under the CPA. *See Mason*, 114 Wn.2d at 854, holding that "[a] loss of use of property which is causally related to an unfair or deceptive act or practice is sufficient injury to constitute the fourth element of a Consumer Protection Act violation." Thus, the Gardners' loss of their home through foreclosure is an injury to them under the CPA.

The Gardners argue also that AHMSI's failure to mediate in good faith caused them to incur additional attorney fees as a result of Wells Fargo's decision to pursue judicial foreclosure. In *Panag*, 166 Wn.2d at 62, the Supreme Court held that

> [c]onsulting an attorney to dispel uncertainty regarding the nature of an alleged debt is distinct from consulting an attorney to institute a CPA claim. *Compare Demopolis*[ *v. Galvin*], 57 Wn. App. 47, 786 P.2d 804 [1990] (litigation expenses incurred to institute CPA counterclaim does not constitute injury), *with Sign–O–Lite*[ *Signs, Inc. v. DeLaurenti Florists, Inc.*]*,* 64 Wn. App. 553, 825 P.2d 714 [1992] (loss of business profits resulting from time spent embroiled in disputing improper payment demand constitutes injury). Although the latter is insufficient to show injury to business or property, the former is not. Investigation expenses and other costs resulting from a deceptive business practice sufficiently establish injury.

Neither party addresses this rule from *Panag* or whether there is an issue of fact as to whether the legal expenses incurred by the Gardners constitute injury under *Panag*.

CR 56(e) states that

> [w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of a pleading, but a response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

The Gardners argue that AHMSI's failure to mediate in good faith caused them to incur attorney fees in defending the judicial foreclosure. However, they have not set forth specific

facts showing they incurred the sort of attorney fees which constitute injury under the CPA by analogy to *Panag* or similar authority. We do not consider issues or arguments unsupported by citation to authority or rational argument. RAP 10.3(a)(6); *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992). Therefore, we must conclude that the attorney fees incurred by the Gardners as the claimed result of Wells Fargo's bad faith are not an injury under the CPA.

   4. Causation

   The fifth element in a CPA claim requires a causal link between the unfair or deceptive act and the injury suffered. *Hangman Ridge*, 105 Wn.2d at 784-85. In *Indoor Billboard/Wash., Inc. v. Integra Telecom of Wash., Inc.*, 162 Wn.2d 59, 83, 170 P.3d 10 (2007), the court held

> that the proximate cause standard embodied in [6A *Washington Practice: Washington Pattern Jury Instructions: Civil* 15.01 (6th ed. 2017) (WPIC)[4]] is required to establish the causation element in a CPA claim. A plaintiff must establish that, but for the defendant's unfair or deceptive practice, the plaintiff would not have suffered an injury.

   The mediator found that AHMSI had failed to negotiate in good faith due to "lack of timely provision of documents." CP at 297. The Gardners do not point to any evidence in the record showing the nature of the documents or how they would likely have acted any differently if the documents had been provided to them in a timely fashion. We recognize the need not to impose impossible or impracticable standards of specificity on litigants, but there must be some evidence that arguably raises an issue of fact as to the effect the untimely provision of documents

---

[4] The term "proximate cause" means a "cause which in a direct sequence [unbroken by any superseding cause,] produces the *[injury] [event]* complained of and without which such *[injury] [event]* would not have happened. WPIC 15.01 Proximate Cause—Definition (alterations in original).

had on the Gardners' injury under the CPA. In the absence of that, the Gardners have not raised a genuine issue of material fact on causation.

Consequently, we hold that the superior court properly granted summary judgment in favor of Wells Fargo on the Gardners' CPA counterclaim.

## II. ATTORNEY FEES

### A. The Gardners' Request

The Gardners argue that we should award them reasonable attorney fees and costs on appeal. Br. of Appellant at 27. They maintain that attorney fees are appropriate under RAP 14.2 and RCW 19.86.090. RCW 19.86.090 permits a party to recover reasonable attorney fees upon the showing of a CPA violation. RAP 14.2 authorizes costs to a party that substantially prevails on review. Because we hold that the superior court did not err below, the Gardners have not substantially prevailed on appeal. Therefore, we hold that this argument fails.

### B. Wells Fargo

Wells Fargo asserts that we should award it reasonable attorney fees and costs on appeal. It argues that reasonable attorney fees are appropriate under RCW 4.84.330, which permits a substantially prevailing party to recover attorney fees incurred in an action to enforce a contract or lease if the contract or lease specifically provides for attorney fees and costs. The deed of trust granted by the Gardners and held by Wells Fargo states that "[i]f . . . there is a legal proceeding that may significantly affect [Wells Fargo]'s rights in the Property, . . . then [Wells Fargo] may do and pay for whatever is necessary to protect [its] . . . rights in the Property." CP at 23. The deed further states that "[Wells Fargo]'s actions may include . . . paying reasonable attorney's fees," and that any amount spent "shall become additional debt of Borrower secured

16

by [the deed of trust]." CP at 23. Wells Fargo prevailed, and we award it reasonable attorney fees on appeal secured by the deed of trust.[5]

Wells Fargo argues that it is entitled to statutory attorney fees and costs under RAP 14. RAP 14 permits the recovery of statutory attorney fees and costs, but not reasonable attorney fees. *Clipse v. Commercial Driver Servs., Inc.*, 189 Wn. App. 776, 798, 358 P.3d 464 (2015), *review denied*, 185 Wn.2d 1017 (2016). Wells Fargo is the substantially prevailing party on appeal because it prevails on the affirmative defense and counterclaim issues. Therefore, we hold that Wells Fargo is entitled to statutory attorney fees and costs on appeal, to be determined by a commissioner of our court after Wells Fargo submits a cost bill pursuant to RAP 14.4.

CONCLUSION

We affirm the superior court's striking of the Gardners' affirmative defense based on the failure to mediate in good faith and its dismissal of their counterclaim under the CPA. We also award Wells Fargo its reasonable attorney fees on appeal secured by the deed of trust.

A majority of the panel having determined that this opinion will not be printed in the

---

[5] Wells Fargo also argues that it is entitled to attorney fees and costs because the Gardners filed a frivolous appeal. Under RAP 18.9(a), we may award sanctions, including an award of attorney fees and costs to an opposing party, if a party files a frivolous appeal. *Granville Condo. Homeowners Ass'n v. Kuehner*, 177 Wn. App. 543, 557, 312 P.3d 702 (2013). An appeal is frivolous if there are no debatable issues upon which reasonable minds might differ and it is so totally devoid of merit that there is no reasonable possibility of reversal. *Granville*, 177 Wn. App. at 557-58. Although we hold that the superior court did not err, the Gardners' arguments are not frivolous. Thus, we decline to award attorney fees and costs to Wells Fargo on this basis.

No. 50242-9-II

Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040,

it is so ordered.

Bjorgen, J.

We concur:

Worswick, P.J.

Sutton, J.

18